FREY & SON, Inc., v. CUDAHY PACKING CO.

(District Court, D. Maryland. December 9, 1915.)

1. COURTS ☞274—ANTI-TRUST ACTS—SUIT AGAINST CORPORATION FOR VIOLATION—DISTRICT OF SUIT.

Clayton Anti-Trust Act Oct. 15, 1914, c. 323, §§ 4, 12, 38 Stat. 731, 736, in providing that a suit for violation of the anti-trust laws may be brought in any district in which the defendant resides, or is found, or has an agent, and that, if a corporation suit may be brought not only in the district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business, and that in such cases process may be served in the district of which it is an inhabitant, does not authorize a suit against a corporation in any district in which an agent may be found, unless he is there in his representative capacity, and the defendant is more or less regularly, through him, transacting business therein.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. ☞274.]

2. COURTS ☞274—ANTI-TRUST ACTS—SUIT AGAINST CORPORATION FOR VIOLATION—DISTRICT OF SUIT—TRANSACTING BUSINESS IN DISTRICT.

Defendant, a foreign packing company, had agents soliciting orders for its products in Maryland, chiefly from jobbing houses, and for the purpose of promptly filling such orders kept a supply of its goods with a storage company, which delivered the same on orders from defendant's officers in other states. Held, that defendant was transacting business in Maryland, within the meaning of Clayton Anti-Trust Act Oct. 15, 1914, c. 323, § 12, 38 Stat. 736, that a suit for a violation of the anti-trust laws could be maintained against it in that district, and that it might be brought into court by process served upon it in the state of its incorporation, as provided in said section.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 814; Dec. Dig. ☞274.]

At Law. Action by Frey & Son, Incorporated, against the Cudahy Packing Company. On motion to quash return of service. Denied.

Horace T. Smith, of Baltimore, Md., and Daniel W. Baker, of Washington, D. C., for plaintiff.

Washington Bowie, Jr., of Baltimore, Md., and Gilbert H. Montague, of New York City, for defendant.

ROSE, District Judge. The plaintiff is a Maryland corporation, carrying on business in the city of Baltimore. It claims that the defendant has, by doing a thing forbidden by the anti-trust laws of the United States, injured it in its business. To recover for the damage so brought about this suit was instituted.

[1] The defendant is an Illinois corporation. It appears specially for the sole purpose of moving to quash the marshal's return of service. It says that (1) it is not liable to suit in this district, because it neither resides, is found, transacts business, or has an agent herein; and (2) if liable herein, it cannot be brought into court by service upon the individuals actually served by the marshal.

The first contention alone raises any vital issue. It is true that there are high authorities for the rule that a nonresident corporation can ordinarily be sued only (1) in the district in which it is carrying

on business; (2) by service upon some agent or officer appointed by and representing it; and (3) in which some state law makes it amenable to suit as a condition of doing business therein. United States v. American Bell Telephone Co. (C. C.) 29 Fed. 17.

The third of .these requirements is obviously inapplicable here. This is a suit brought in a federal court, to recover for a wrong done in contravention of a federal law, which law specifies the district in which such suit may be prosecuted.

Nor in this case is the second of much greater real importance. Ordinarily, process either of a state court or of a District Court of₁ the United States cannot be served beyond the territorial limits of the state or of the district, as the case may be. A nonresident corporation may be doing business in a district, and therefore theoretically be liable to suit therein; but if it is not represented therein by an agent, upon whom process against it may be legally served, it cannot, against its will, be brought into court. The framers of the Clayton Act, however, have taken care that suits authorized by it shall not be so obstructed. The twelfth section of that statute provides for the bringing of a corporation into the court of any district in which, under that act, it may be sued, by service of process upon it in any district of which it is an inhabitant, or wherein it may be found. If the defendant is properly suable in this district, the objection to the representative character of the so-called agent, upon whom the process herein was served, would not end the suit here. It could have no other effect than to delay the progress of the case until process could be served upon the defendant in the district of which it is an inhabitant.

The first requirement remains of binding force, except in so far as, if at all, it has been modified by the provisions of the Clayton Act. The fourth section of that act provides that such suit as this may be brought in the district in which the defendant resides, or is found, or has an agent, and section 12, that such suit, when against a corporation, may be brought, not only in the judicial district in which it is an inhabitant, but also in any district wherein it may be found or transacts business.

Plaintiff contends that both these sections are applicable to corporate defendants, although section 12 obviously has nothing to do with noncorporate. Assuming, without deciding, that defendant's contention in this respect is sound, there is nothing in the history of this legislation, or of the needs, or supposed needs, which gave rise to it, to suggest that Congress intended to say that a defendant corporation could be sued in any district in which an agent of it happened to be on business other than its own. Clearer language than that used would be required to show that Congress intended to change the rule that an officer, agent, or employé of a corporation cannot carry it into any jurisdiction .in which he is not acting for it. But, when he is so acting, the corporation is, through him, doing something there, and, if it is through him regularly doing something, it is in the broadest sense, at least, doing business.

The language used, viz. "has an agent residing," does not suggest that the mere casual presence of an agent would be sufficient. It seems as

if Congress, in using it, had in mind those cases which have held that a corporation is not doing business generally in a district, unless it is there carrying on a fairly continuous series of transactions. Into many of these questions it is not here necessary to go.

Congress doubtless meant to facilitate the redress of wrongs done in violation of the anti-trust acts. It wanted to let a plaintiff sue wherever it was most convenient to him, provided injustice was not thereby done a defendant. The provision in section 12, for serving process in another district from that in which the suit was instituted, itself took out of a plaintiff's way most, if not all, the purely technical obstacles which had formerly obstructed it. Congress, in designating the district in which the suit against a corporation might be brought, did not materially, if at all, change the rule which had been laid down in a long line of well-considered cases. Probably in the nature of things it could not. The intangible thing, a corporate aggregate, can fairly be supposed to be always found in the state which gave it being. It may, without obvious unfairness, be made suable wherever it chooses to carry on some part of its business. But it cannot be said to be anywhere else. Persons connected with it may be; but, if it is not acting through them at the time, they cannot carry it with them. But, so far as corporate defendants are concerned, does not the act go as far as there is any reason any one should want it to go? A corporation may be sued under this statute where it transacts business. It cannot escape the obligation to respond because no agent of it, of the rank and character qualified to be served for it, can be there found. Suit may be there brought and process may issue to a district in which it cannot deny its liability to service.

The act so construed will for practical purposes usually make it unimportant to consider, in connection with liability to suit and to service, any question except whether the defendant is doing or transacting business in a particular district, for, unless it is, it cannot possibly have any agent who, as agent, is therein.

[2] Last May, when this suit was brought, was the defendant doing business in this district? The relevant facts are not in dispute. For some years previous it had a number of customers in this state. Most of these were jobbers, handling wholesale groceries and like goods. They bought defendant's products for the purpose of reselling them to retailers in the ordinary course of business. For some reason or other it preferred to call them "distributing agents." In some instances defendant sold some of its products directly to ultimate consumers. They were usually institutions or owners of large buildings, who bought in fairly considerable quantities. It had drummers, who regularly visited the jobbing trade, in order to secure orders for its wares.

As is the usual business custom, when these orders were received at one or the other of defendant's principal offices outside of Maryland, reserved to itself the right of accepting or rejecting them. It further stimulated a demand for certain of its products by sending an agent to the retail grocers. It was his business to show how the appearance of the corner grocery could be made more attractive by displaying the advertising matter which the defendant was ready to furnish to those

who kept its "Old Dutch Cleanser" for sale. If this agent was able to interest the grocer, he would ask him with what jobber he dealt, and if one who handled defendant's goods was named the agent would get an order from the grocer on such jobber for as much of defendant's goods as the grocer could be induced to buy. Whether the order was or was not filled, of, course, rested with the jobber. In these ways, in addition doubtless to the usual advertising through the mails and otherwise, the defendant sought here to create and maintain a demand for its wares.

To facilitate the supply of that demand, when the goods were, as usual, called for in less than carload lots, and for the purpose of rendering easier the work of its retail demonstrator, it had, some years ago, entered into an arrangement with the Fidelity Warehouse Company. The latter operates several large warehouses in this city. As such arrangement worked out in actual practice, the defendant kept always at such warehouses a stock of its goods, the value of which at any one time might be as much as $10,000. These goods were shipped in carload lots to the Warehouse Company, which unloaded them from the car and stored them. Upon orders from the defendant, sent from one of its officers outside the district, the Warehouse Company would deliver cases of these goods to persons to whom the defendant, upon the orders in part secured by its drummers, had sold them, or it would, upon like orders, ship portions of them by rail or water in intra or inter state commerce. The Warehouse Company itself made no sales. The contract between it and the defendant provided for the collection in some cases of money due on goods sold C. O. D.; but in point of fact such transactions were so extremely rare as to be almost unknown. It was authorized to deliver goods up to a certain aggregate quantity to certain named customers of the defendant, upon the request of such customers, and without receiving any specific authority so to do from the defendant. Such customers were, however, seldom or never dealers, but were the large ultimate consumers before mentioned. Moreover, the defendant kept at the warehouses quantities of, its advertising matter, which were used by its demonstrator in decorating retail grocery stores.

For its services the Warehouse Company was compensated by certain agreed storage and hauling charges. Under the circumstances, was the defendant doing business in Maryland? Many cases have been referred to by one or the other party. It is believed all have been examined. A great many of them are beside the question here to be passed on. Quite a number turn, not so much upon whether a nonresident corporation or individual is doing business of some kind in a particular state, as upon whether what the state has done, or attempted to do, amounts to a direct burden upon interstate commerce. As, for example, there is no question that, in transporting interstate freight into, out of, or through a state, the carrier transacts business therein; but it is not business upon which a state can impose a direct burden.

Other cases cited have their origin in state statutes, which prohibit a nonresident corporation doing business in the state, suing in the state

courts, unless it has complied with certain requirements as to the appointment of agents, etc. Here the courts are disposed to construe the phrase "doing business" in the light of the policy which dictated such enactments.

As the Supreme Court itself has pointed out, it is not possible, in cases in which the sole issue involved is the liability of a nonresident corporation to be sued, to formulate any general rule of universal application. Each of such cases must depend upon its own facts. International Harvester Co. v. Kentucky, 234 U. S. 579, 583, 34 Sup. Ct. 944, 58 L. Ed. 1479. Whether a nonresident corporation is doing business specially, so as to subject it to suit at the instance of a particular defendant, may depend in part upon the relation of the things it is doing to the cause of action asserted. Mutual Life Insurance Co. v. Spratley, 172 U. S. 602, 618, 19 Sup. Ct. 308, 43 L. Ed. 569.

In the case at bar the gravamen of the plaintiff's declaration is that the defendant, in order to coerce it to become a party to an alleged agreement, which was to be carried out chiefly in Maryland, refused to sell to plaintiff its goods; that is to say, refused, for this alleged illegal purpose, to let plaintiff share in any of the facilities, to furnish which was the purpose of the business activities, which, as before set forth, the defendant carried on in Maryland, or caused others to carry on for it. There is no reason under such circumstances to interpret the phrase "doing or transacting business" as if it was a term of an art or a mystery. The average man, whether intelligent or unintelligent, would suppose that a concern which kept steadily on hand in Maryland perhaps $10,000 of goods to facilitate their prompt delivery to numerous customers in that and neighboring states, so soon as the company at one of its outside offices had accepted offers which it kept men busy in Maryland soliciting, was doing business in the state. Whatever may sometimes be the case, there is no occasion here to assume that the reason of the law is not a man's natural reason.

It follows that, when this suit was instituted, the defendant was doing business in this district, within the meaning of the Clayton Act. The defendant says, nevertheless, that the return should be quashed because served upon persons who were not its agents of a character or rank upon whom such service could lawfully be made. Such an issue may often be delicate and difficult. A corporate defendant who is enough in the state or district there to wrong some one should be held to be enough in the state or district to be there answerable for what it has there wrought, provided such holding can be made without giving sanction to practices which in other cases would work injustice. On the other hand, no corporate defendant should be compulsorily brought into court by service upon one who, although connected with it in some sense, bears no such relation to it as to make it fair to presume that either it or any other reasonable and prudent person in like case would care to run the risk of being served by service upon him.

To subject the nonresident to suit in favor of the resident is often, although not always, a result which may justly be thought desirable.

State legislation and state decisions show how the anxiety to attain that end has led to holding good the service of process upon so-called agents, who have little connection with, responsibility to, or concern for the absent defendant. On the other hand, to insure, so far as is humanly possible so to do, that no one shall be judged without having a real opportunity to be heard, is perhaps the most fundamental of all the rights involved in due process of law.

In suits under the Clayton Act is there any reason even to attempt a solution of such problems, or to make decisions which in some other cases may lead to injustice? Provided the defendant is suable at all in the district, why not see to it that it shall be summoned in a way to which no possible objections can be made, and which cannot create a dangerous precedent. Whenever upon grounds not obviously frivolous the question is raised as to the authority of the agent upon whom process was served, why cannot the court suspend its answer until the plaintiff has had due process served, as the Clayton Act authorizes, in the home district of the defendant, upon some of its officers whose right to accept service for it cannot be gainsaid. When such service has been made, the question as to whether the earlier one was or was not good will have become so purely academic that there will seldom be an occasion to answer it at all.

Such course will be followed in this case, provided plaintiff acts with reasonable diligence in causing process to be served upon the defendant in the district of its residence.