**MIDWEST FUR PRODUCERS ASS'N et al. v. MUTATION MINK BREEDERS ASS'N.**

Civ. No. 3752.

United States District Court
D. Minnesota, Fourth Division.
Dec. 28, 1951.

A. Lyman Beardsley and Morley, Cant, Taylor, Haverstock & Beardsley, Minneapolis, Minn. (Gerrit P. Groen and Wilkinson, Huxley, Byron & Hume, Chicago, Ill., of counsel), for defendant in support of said motion.

Lee Loevinger, Minneapolis, Minn. (Larson, Loevinger, Lindquist & Freeman, Minneapolis, Minn., of counsel), for plaintiffs in opposition thereto.

NORDBYE, Chief Judge.

This action is based upon the theory that defendant is violating the antitrust laws and is claiming trade mark rights to which it is not entitled. Defendant is a Wisconsin corporation, and process herein was served upon it at its principal place of business in Wisconsin. Defendant now moves (1) to quash the service of process upon the ground that this Court cannot exercise extra-territorial jurisdiction, and (2) to dismiss the action upon the ground that defendant is not subject to this Court's jurisdiction. Defendant recognizes in its supplemental brief that the first issue will be moot if no jurisdiction exists over defendant's person. See also Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, 373, 374, 47 S.Ct. 400, 71 L.Ed. 684, and United States v. Scophony Corp. of America, 1948, 333 U.S. 795, 807, 809, 810, 68 S.Ct. 855, 92 L.Ed. 1091. Therefore, only the question of dismissal need be considered here. The issue is one of jurisdiction.

Plaintiffs contend that this Court possesses jurisdiction under Section 12 of the Clayton Act, 38 Stat. 736, 15 U.S.C.A. § 22. That statute provides, "Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; * * *."

Both plaintiffs and defendant recognize that the issue here is if defendant was "transacting business" within the meaning of this statute. The test for determining that issue was stated by the Supreme Court as follows in Eastman Kodak Co. of New York v. Southern Photo Materials Co., 1927, 273 U.S. 359, at page 373, 47 S.Ct. 400, at page 403, " * * * a corporation is engaged in transacting business in a district, * * * if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character."

This test was reaffirmed in United States v. Scophony Corp. of America, 1948, 333 U.S. 795, at page 807, 68 S.Ct. 855, at page 862. And the Supreme Court added, "The principal, everyday business or commercial concept of doing or carrying on business 'of any substantial character' became the test" under the Eastman decision.

In the instant case, the record shows that the defendant is a cooperative corporation organized under the laws of Wisconsin with approximately 2,700 members at the present time throughout the United States. Corporate headquarters are in Wisconsin. All of defendant's members are mink farmers. Approximately 166 live in Minnesota and constitute about 28 per cent of the mink ranchers resident in Minnesota. Although one of defendant's directors lives in Minnesota, the business meetings of defendant are held in Wisconsin, and no director or officer of the corporation is authorized to transact business for defendant outside of Wisconsin. Defendant has no employees or agents in Minnesota. All contracts are made at the directors' meeting held in Wisconsin. In 1950 defendant circularized all mink ranchers in the United States, including those in Minnesota, who were not members of the defendant corporation and invited them to join the association. Some new members assumedly were obtained.

Defendant's chief objective is to promote the sale of mink fur of the type in which it is interested and to assist its members in disposing of their pelts. This assistance is rendered through an advertising program in trade and commercial magazines with national circulation, through contracts with fur auction companies, and through reports to members concerning

the marketing of pelts. Defendant does not engage in selling pelts itself.

Vogue, Harper's Bazaar, Town and Country, Social Spectator, and American Fur Breeder are the principal advertising media. All but the latter magazine are published outside Minnesota, and contracts for all advertising, including that in the American Fur Breeder, are and have been consummated in Wisconsin.

Defendant's contract with the fur auction companies also was consummated in Wisconsin. The existing contract provides in substance that defendant will endeavor to induce its members to consign their mutation mink pelts to the New York Auction Company and to Lampson, Fraser, and Huth, Inc., or Eastwood and Holt, Inc., all of New York, or to Seattle Fur Exchange of Seattle, Washington. The auction companies in return agreed to furnish certain services and advice to defendant's members and to sell their pelts for a specified commission. The companies also agreed to deduct from the sale price of all mutation mink pelts sold, and turn over to defendant, a designated percentage to be agreed upon between defendant and its members. This agreement has been carried out.

The New York Auction Company of Minnesota is a subsidiary of the New York Auction Company and does business in Minnesota. The subsidiary sold pelts for the defendant's members under a 1949 agreement between defendant and the parent company. And defendant received approximately $1,710.82 from the subsidiary as the amount deducted for defendant from the sale price·for the period ending December 31, 1950. But that contract pertained only to the 1949 fur crop (sold in 1950), and is the only contract which defendant had with the subsidiary. The contract was not renewed in 1950, and none is in effect now with the subsidiary. Defendant's trade mark was placed upon its members' furs which the auction companies sell.

From these facts it is apparent that defendant aids its members principally by contracting with nationally circulated magazine publishers for the printing of an advertisement in that particular media and by contracting with fur auction companies to sell members furs for a stated commission and give defendant a percentage of the proceeds which in turn are used to further the sale of mink fur. In neither situation is defendant involved in a transaction in Minnesota on this record. The act of publishing the·advertisement and circulating the magazine in Minnesota as well as the other forty-seven states is performed by the publisher and his agents. The act of selling the furs and being of service to defendant's members is the act of the fur auction companies and their agents. None of them are agents of defendant. The thing which assists defendant's members, so far as defendant's acts are concerned, is the contract which requires the publisher and the fur company to do designated acts. These contracts, and therefore the acts by which they are made, are consummated and take place in Wisconsin, not Minnesota, on this record. The effect of defendant's acts, not defendant's acts themselves, exist in Minnesota with respect to the advertising and fur company transactions. That defendant should not be considered as transacting business in Minnesota merely because its Minnesota members are benefited by acts which defendant does in another state with reference to all of the United States seems evident. Defendant is not a party to any transaction in Minnesota and therefore would not be transacting business here, with respect to advertising and fur auction company activities.

The only other acts to which plaintiff points are the solicitation of Minnesota members by defendant in 1950, the membership of defendant in the National Board of Fur Farm Organizations, Inc., economic pressure by defendant on various marketing agencies, and defendant's assertion to plaintiffs of trade mark rights in Minnesota. But the record does not show that the transactions constituting economic pressure could be considered to have taken place in Minnesota. The allegations state the effect of a transaction or transactions and do not indicate where they necessarily occurred.

Likewise, defendant's affidavits establish without contradiction that its director who lives in Minnesota transacts no business for defendant in Minnesota. The acts which the director does and where in law he does them, not where he lives, determines the issue involved here. Moreover, membership in the Fur Farm Organization, with representation on the Board of Directors, shows no transaction of defendant's business in Minnesota. So far as this record shows, the defendant's representative on the Board of Directors of the Fur Farm Organization helps transact the organization's business, not defendant's business, when he attends meetings here as a director of the fur farm organization. Mere membership in an organization does not show that defendant is transacting business here. And the issue of whether defendant is transacting business in Minnesota must be determined from all the facts of the case, not, as plaintiff urges, from the implications of a legal theory which defendant may urge concerning trade mark rights in Minnesota. The implications which plaintiff seeks to draw from that legal theory do not appear to be necessary ones. Finally, the solicitation of members here in 1950 by defendant does not appear sufficient by itself to constitute the transaction of business in Minnesota. That act was not of such a nature on this record that defendant could be considered transacting business here in June, 1951, when this action was commenced. It shows no continuity. On this record, it was an isolated act, not the transacting of business of a substantial character. No other dealings between defendant and its Minnesota members are shown. Although, as plaintiffs point out, the nature of a corporation and its activities must be recognized in determining if it is transacting business in a given state, consideration of this record both as a whole and according to separate acts discloses that defendant has not been transacting business in Minnesota during the times relevant to this action. Each case, of course, turns on its own facts. The cases cited by plaintiffs in support of their argument here are distinguishable on their facts.

In view of these premises, therefore, defendant's motion to dismiss this action for lack of jurisdiction is granted without prejudice to plaintiffs' right to bring the action in a forum in which the Court possesses jurisdiction. It is so ordered. An exception is reserved.

Let judgment be entered accordingly.