R. E. BRUNER and Rich Plan of Springfield, Missouri, Inc., Plaintiffs,

v.

REPUBLIC ACCEPTANCE CORPORATION, Rich Plan Corporation and Rich Plan of Central Arkansas, Defendants.

No. LR–60–C–103.

United States District Court
E. D. Arkansas, W. D.

Feb. 14, 1961.

L. Gene Worsham of Howell, Price & Worsham, Little Rock, Ark., for plaintiffs.

Dan Felts and J. Malcolm Robinson, Austin, Tex., Phillip Carroll of Rose, Meek, House, Barron & Nash, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This cause is now before the Court upon the motion of defendant Republic Acceptance Corporation to dismiss the complaint as to it for lack of jurisdiction, improper venue, and want of valid service. Said motion has been submitted upon the complaint and exhibits thereto, affidavits submitted by the movant, and written briefs.

The case arises from the operation in Arkansas between 1955 and 1960 of the so called "Rich Plan" for the distribution of home freezers and packaged frozen foods. Plaintiffs (hereinafter sometimes called plaintiff) are R. E. Bruner, an individual citizen of Arkansas, and Rich Plan Corporation of Springfield, Missouri, a corporation organized under the laws of that State and which is authorized to do business and is doing business in Arkansas. Said corporation has its principal place of business in Little Rock where it operates under the trade name of Rich Plan of Little Rock.

In addition to Republic Acceptance Corporation (hereinafter called Republic), the defendants are Rich Plan Corporation, a Nevada corporation which has its principal place of business at Dallas, Texas, and Rich Plan of Central Arkansas, organized in the summer of 1960 as an Arkansas corporation, a wholly-owned subsidiary of Rich Plan Corporation.

The Rich Plan involves the sale to consumers of frozen food storage units for their homes and of packaged frozen foods to be placed in the units. The sales to consumers are made by local dealers having franchises issued by Rich Plan Corporation, and the sales are generally made on credit with the purchasers executing promissory notes to the dealers, which notes are payable in installments. Republic is a Texas corporation with its

place of business at Austin, Texas, and during the period involved in this case it was engaged in purchasing notes given to Rich Plan dealers.

The individual plaintiff, R. E. Bruner, prior to the execution of a certain "management contract" set forth in the complaint, was the owner of all of the stock in the corporate plaintiff, Rich Plan Corporation of Springfield, Missouri. That corporation in 1955 allegedly obtained an exclusive franchise to distribute Rich Plan freezers and frozen foods in the States of Arkansas and Missouri.

It is alleged that subsequent to the issuance of the franchise to the corporate plaintiff by Rich Plan Corporation, the defendants entered into a conspiracy in restraint of trade and of interstate commerce, the purpose of which was to destroy the business of the dealer and vest a monopoly in the home freezer business in Arkansas in Rich Plan Corporation itself. It is charged that acting in furtherance of said conspiracy the defendants have performed acts and have followed practices, including discriminatory practices, which have greatly damaged the plaintiff.

The complaint is in three counts. In the first count the plaintiff sets up the alleged conspiracy and results thereof, and seeks treble damages under the federal anti-trust laws. 15 U.S.C.A. § 1 et seq. The second count is directed at Republic alone, and is, in actuality, a separate and distinct claim or cause of action not bottomed upon the anti-trust laws. The third count is directed at Rich Plan Corporation alone and charges a breach of contract and of fiduciary duties.

Returning for a moment to the second count, it is therein alleged in substance that acting under a written dealer's contract plaintiff sold commercial paper to Republic, that customers' notes taken by plaintiff were endorsed to Republic which discounted them, and that Republic now holds such notes on which plaintiff is con-

tingently liable in the aggregate amount of approximately $45,000. It is further alleged that under the contract with Republic a dealer's reserve was set up to protect Republic against loss, and that there is now in the reserve a sum in excess of $7,000. Plaintiff claims that the notes which it took and which it sold to Republic were usurious and void, that the notes should be cancelled, and that plaintiff should recover the moneys now held in the dealer's reserve.

The complaint was filed August 22, 1960, on which day one John Alford, vice-president of Republic, was in Little Rock engaged in a business conference with Mr. Bruner, the individual plaintiff, and copies of the summons and complaint were served on Alford as agent for Republic.[1] Republic has never qualified to do business in Arkansas, maintains no office here, and has never designated an agent for service in Arkansas.

It is the position of Republic that the purported service on Alford was insufficient to confer jurisdiction, and that on the anti-trust count of the complaint venue as to Republic was laid in this district improperly.

I.

The federal anti-trust laws contain two venue sections which are applicable to suits brought by private parties.

Title 15 U.S.C.A. § 15, which is section 4 of the Clayton Act of 1914, provides that any person who shall be injured in his business or property by reason of any violation of the anti-trust laws may recover treble damages, costs, and an attorney's fee, and that he may bring his action in any district court of the United States in the district in which the defendant "resides or is found or has an agent."

Title 15 U.S.C.A. § 22, which is section 12 of the Clayton Act, relates to anti-trust suits against corporations, and it provides that such suits may be brought not only in the district whereof

1. Copies of the summons and complaint were served on the same day upon Rich Plan Corporation and Rich Plan of Central Arkansas. Those services have not been questioned.

the corporate defendant is "an inhabitant," but also in any district wherein the corporation "may be found or transacts business." That section also provides, in substance, that service of process may be had in any district of which the defendant corporation is an inhabitant or in which it may be found. Thus, when venue is properly chosen, the service of process is not subject to the conventional territorial limitations set forth in Rule 4 of the Federal Rules of Civil Procedure, 28 U.S.C.A.[2] However, the service features of section 22 come into play only if venue is chosen properly. Goldlawr, Inc. v. Shubert, D.C.N.Y., 175 F.Supp. 793, appeal dismissed Goldlawr, Inc. v. Heiman, 2 Cir., 273 F.2d 729; Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, D.C.Minn., 102 F.Supp. 649.

In the leading case of Eastman Kodak Company v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, the Supreme Court held that section 22 substantially broadened the venue provisions of the earlier statutes, and that under it a corporation may be sued in any district in which it "transacts business" even though it is not present in the district by agents carrying on business of such character and in such manner that the corporation would be deemed to be "found" within the district. A corporation is held to be amenable to suit in a district if "in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character. * * * *" 273 U.S. at page 373, 47 S. Ct. at page 403.

The views expressed in Eastman were reaffirmed in United States v. Scophony Corporation of America, 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091, where the Court held that, in determining whether the venue requirements of section 22 have been met, practical non-technical business or commercial standards are to be employed.

The statute is a remedial one and is to be given broad and practical construction. See Green v. U. S. Chewing Gum Manufacturing Co., 5 Cir., 224 F.2d 369; Goldlawr, Inc. v. Shubert, D.C. Pa., 169 F.Supp. 677. But, although the statute is to be given a liberal construction, it does not go so far as to permit venue to be predicated upon any corporate contacts with the forum district, regardless of how slight, minimal, or sporadic those contacts may be. The business transacted must be of a substantial character, and it must have some degree of continuity. Mere isolated or sporadic contacts are not sufficient. Eastman Kodak Co. v. Southern Photo Materials Co., supra; Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n, supra; Windsor Theatres Co. v. Loew's, Inc., D. C.D.C., 79 F.Supp. 871; Westor Theatres v. Warner Bros. Pictures, D.C.N.J., 41 F. Supp. 757. Actually, no hard and fast rule can be laid down by reference to which it can be determined whether a particular corporation has "transacted business" in a given district. Each case must be decided in the light of its own facts and circumstances. Yonce v. Miners Memorial Hospital, D.C.Va., 161 F. Supp. 178; Austad v. United States, D.C. Cal., 141 F.Supp. 437. And, when venue is challenged by a defendant, the burden of proof is upon the plaintiff. Wentling v. Popular Science Publishing Co., D.C. Pa., 176 F.Supp. 652; McManus v. Capital Airlines, D.C.N.Y., 166 F.Supp. 301; Rohlfing v. Cat's Paw Rubber Co., D.C. Ill., 99 F.Supp. 886.

Republic says it has not been "found" in Arkansas, that it has never "transacted business" here, and accordingly that the first count of plaintiff's complaint cannot be maintained in this district. In support of its position Re-

2. In view of the service provisions of section 22, it is clear that the movant's attack on plaintiffs' anti-trust count raises merely a question of venue rather than a question of jurisdiction. This is true because if venue is proper in this district as far as Republic is concerned, the plaintiffs would be entitled to serve Republic at Austin, Texas, thus curing any defect in the service on Alford. See Frey & Son v. Cudahy Packing Co., D.C. Md., 228 F. 209.

public has filed the affidavits of its president, Mr. John Moss, and of one of its attorneys, Mr. Dan Felts. Those affidavits have not been controverted, and the Court accepts as true the factual statements contained therein.

As stated in the Moss affidavit, Republic is a Texas corporation with its home office in Austin. It has no permit to do business in Arkansas. All of its employees and executives reside in Austin and work in the Austin office which is the only office it maintains. Moss states that Republic is engaged in the business of financing installment food notes which are secured through and from dealers in the business of selling home food freezers and stores of frozen food, that the corporation purchases or accepts such notes from dealers who forward the notes to Republic's office at Austin, and that payments on notes are directed to and received at Austin.

Moss says that between June 29 and July 5, 1960, Republic purchased from plaintiff notes having a total value of approximately $3,500, and drew checks in payment therefor, which checks were forwarded to Little Rock. However, before the checks were paid by the Texas drawee, Republic obtained information tending to show that some of the notes had been given by makers who had not received full consideration therefor, whereupon Republic stopped payment on the checks and payment was refused by the drawee bank.

The affiant then goes on to say that a controversy developed between plaintiff and the Union National Bank in Little Rock, in which bank the checks in question had been deposited, and that Republic was drawn into the controversy to some extent. He states that Republic learned that the Union National Bank had filed suit against plaintiff, and that Bruner telephoned Republic to ask that the check matter be settled in some manner.

Moss says further that Republic finally decided to pay the checks, and that a conference was arranged and held at Little Rock in connection with the settlement. While attending that conference Alford was served with process in this action.

The affidavit concludes with the statement that Alford's visit was the only occasion on which any officer or employee of Republic had ever been in Arkansas on any company business, except that affiant himself had made one trip to Little Rock in March 1960 to negotiate a contract with R. E. Bruner.

The Felts affidavit establishes that he had several telephone conversations with Bruner relative to the check controversy, that on one occasion Bruner stated that he would meet Moss anywhere in an effort to have the controversy settled, that in a later conversation between Felts and Bruner it was agreed that Alford would go to Little Rock for the purposes mentioned in the Moss affidavit, and that affiant recommended to Republic that Alford be sent to Little Rock for the limited purposes of attending the conference and paying the checks.

From a consideration of the affidavits and of the written contract between plaintiff and Republic, it appears that the notes taken by plaintiff were transmitted to Republic by mail, that Republic mailed its checks to Little Rock, that the mails were used in clearing the checks, that the makers of the various notes would mail their remittances to Republic or would pay the plaintiff who would, in turn, remit to Republic by mail, and that if a purchaser defaulted on his note the unpaid balance would be charged to and collected from plaintiff. It does not appear that Republic handled any collection or effected any repossessions in Arkansas, and the only two occasions upon which any Republic officer or employee came into the State are the Moss visit in March 1960 and the Alford visit in August of that year.

Considering Republic's operations from a practical, everyday business or commercial standpoint, the Court cannot conclude that the Arkansas contacts of Republic were sufficient, either qualitatively or quantitatively, to constitute "transacting business" in Arkansas even under the liberal construction that is to be given to section 22. It would be going much too

far, in the Court's opinion, to say that a finance company is transacting business in a State merely because it purchases notes that have been executed therein, or because it receives and remits moneys by mail using ordinary banking channels, or because it may conduct some necessary correspondence with its dealers in the State or with the makers of the notes. In other contexts such activities have not been deemed the doing of business (Bamberger v. Schoolfield, 160 U.S. 149, 16 S. Ct. 225, 40 L.Ed.2d 374; Equitable Credit Co. v. Rogers, 175 Ark. 205, 299 S.W. 747, and cases there cited), and they are not sufficient in this context. The two visits mentioned were isolated transactions, and the Alford visit was certainly out of the ordinary course of business. Cf. Windsor Theatres v. Loew's, Inc. and Westor Theatres v. Warner Bros. Pictures, both supra.

■ It is argued by plaintiff that the fact that the first count of the complaint alleges a conspiracy is sufficient to justify suit in this district against Republic. The argument is based upon the fact that section 15 of 15 U.S.C.A. provides that a defendant may be sued in any district in which he has "an agent," and the contention is made that in a conspiracy each co-conspirator is an agent for all of the others. While some support for this view is said to be found in Giusti v. Pyrotechnic Industries, 9 Cir., 156 F.2d 351, and in some district court decisions mentioned in a footnote to the opinion in Goldlawr, Inc. v. Shubert, supra, 169 F.Supp. at page 684, note 12, the more recent cases, with which the Court finds itself in agreement, reject that theory and hold that venue is not created by a mere conspiracy allegation, the defendant in question not being an inhabitant of the district of the forum and not being found there and not having transacted any business therein. Bertha Building Corporation v. National Theatres Corp., 2 Cir., 248 F.2d 833, certiorari denied 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811; Goldlawr, Inc. v. Shubert, supra, 169 F.Supp.

at page 684; McManus v. Capital Airlines, Inc., supra; Independent Productions Corp. v. Loew's, Inc., D.C.N.Y., 148 F.Supp. 460. The cases cited by plaintiff on this phase of the case are criminal cases and are not in point. The distinction as to venue between a criminal prosecution for a conspiracy to violate the anti-trust laws and a civil suit by a private individual to recover damages alleged to have been suffered as a result of such conspiracy was expressly recognized in Independent Productions Corp. v. Loew's, Inc., supra.

The first count of the complaint will be dismissed as to Republic for improper venue.

## II.

It has been noted that the second count of the complaint involves a separate and distinct controversy between the plaintiff on the one hand and Republic on the other. In its motion Republic challenges jurisdiction both of the subject matter and of its corporate person.

The contention that the Court lacks jurisdiction of the subject matter is not well founded. Although plaintiff failed to allege diversity of citizenship as a basis of jurisdiction, it is clear from the record that diversity exists in fact, and that the amount in controversy exceeds $10,000, the plaintiff seeking the cancellation of notes having a value of about $45,000 and the recovery of approximately $7,000 in addition.

■ However, it is equally clear, and in fact necessarily follows from the Court's disposition of the venue question, that the Arkansas contacts of Republic were not sufficient to subject it to the in personam jurisdiction of this Court by means of service upon an agent temporarily in the State on company business. If the contacts of a foreign corporation with this State are not sufficient to satisfy the venue requirements of 15 U.S.C.A. § 22, a fortiori, they are insufficient to meet the stricter requirements which must be satisfied in order to subject a

non-qualifying foreign corporation to jurisdiction at this forum.[3]

The problem in connection with the second count is quite similar to that which was presented to this Court in the recent case of McAvoy v. Texas Eastern Transmission Co., D.C.Ark., 185 F.Supp. 784. The Court does not deem it necessary to discuss that case or to quote from the opinion. Suffice it to say that the contacts of the foreign corporation which were held in McAvoy to be insufficient to sustain personal jurisdiction were, in the Court's eyes, notably more substantial than were Republic's contacts with Arkansas.

The second count of the complaint will be dismissed in its entirety, which will take Republic out of the lawsuit.

An appropriate order will be entered

---

3. For cases holding that contacts with a district which will be considered as "transacting business" within the meaning of 15 U.S.C.A. § 22 need not be as significant as those required when the question of validity of service on a foreign corporation is involved, see Abrams v. Bendix Home Appliances, D.C.N.Y., 96 F.Supp. 3; Windsor Theatre Co. v. Loew's, D.C.D.C., 79 F.Supp. 871.