**STATE OF WEST VIRGINIA, and its departments, divisions and agencies, the Cities of Charleston, Huntington, Wheeling, Beckley, Bluefield, Clarksburg, Fairmont, Morgantown, Moundsville, St. Albans and Weirton, All Municipal Corporations, Plaintiffs,**

v.

**MORTON INTERNATIONAL, INC. (formerly Morton Salt Company), Diamond Crystal Salt Company, International Salt Company, Carey Salt Company, Cayuga Salt Company and Hardy Salt Company, Defendants.**

No. 4–66–Civ. 292.

United States District Court
D. Minnesota,
Fourth Division.

Feb. 1, 1967.

C. Donald Robertson, Atty. Gen., Benjamin F. Yancy, Jr., Deputy Atty. Gen., Samuel J. Smith, Asst. Atty. Gen., State of West Virginia, Charleston, W. Va., and Lee A. Freeman, Sp. Asst. Atty. Gen., and McConnell, Freeman, Curtis & McConnell, Chicago, Ill., for plaintiffs.

Allen I. Saeks and Leonard, Street & Deinard, Minneapolis, Minn., Bruno A. Mazza, Jr., and Bryant, Mazza & Williamson, Ithaca, N. Y., for defendant Cayuga Rock Salt Co.

## MEMORANDUM

LARSON, District Judge.

The State of West Virginia, its departments, divisions and agencies and several municipalities within the State, instituted this antitrust action to recover treble damages from several defendants for alleged price fixing in the sale of rock salt. This is one of many rock salt treble damage actions pending in this District. See State of Michigan v. Morton Salt, 259 F.Supp. 35 (D.Minn. 1966). In the instant action defendant Cayuga Salt Company moves to quash the service of process and dismiss the action for improper venue. Defendant is a Delaware corporation and was served at its principal place of business in Myers, New York. Defendant maintains that it is not an inhabitant of the District of Minnesota, that it is not found here, and that it transacts no business here within the meaning of § 12 of the Clayton Act, 15 U.S.C. § 22. That provision is directed to the place for venue and service in antitrust actions against corporations.

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

Section 22 serves the dual purpose of fixing the place of venue and determining the place of service. If venue in this District is appropriate under § 22, extraterritorial service upon Cayuga at the place of its inhabitancy was permissible. United States v. Burlington Industries, Inc., 247 F.Supp. 185 (S.D.N.Y.1965); Public Service Company v. Federal Pacific Electric Co., 210 F.Supp. 1 (D.N. M.1962); Bruner v. Republic Acceptance Corp., 191 F.Supp. 200 (E.D.Ark. 1961). The Court concludes that venue in this District cannot be sustained. Therefore, Cayuga's motion to quash service and dismiss the action must be granted.

Originally, under § 7 of the Sherman Act, venue in antitrust actions against corporations could be laid only in the district where the defendant resided or was found. In People's Tobacco Co., Ltd. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587 (1918), the Supreme Court interpreted the word "found" to require that a corporation "be present in the district by its officers and agents carrying on the business of the corporation." The Court continued:

"The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted." 246 U.S. at 87, 38 S.Ct. at 235.

The "carrying on business" test embodied in the term "found" in § 7 of the

Sherman Act applied both to venue and service. United States v. Scophony Corp., 333 U.S. 795, 904–905, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). Thus venue could be laid only where the defendant resided or was found; similarly, service could be made only where the defendant resided or was found.

██ With the advent of the Clayton Act, the venue provisions of § 7 were modified. With respect to corporations, § 12 of the Clayton Act, 15 U.S.C. § 22, increased the permissible sites for venue by adding the phrase "or transacts business." That phrase was construed in Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927), to have a much broader meaning than the concept of carrying on business. The Court indicated that the Clayton Act amendments were intended to enlarge the venue choices of antitrust plaintiffs, and adopted an everyday, commercial test of transacting business.

"* * * [W]e think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its [the amendment's] necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corporation resides or is 'found,' but also in any district in which it 'transacts business' —although neither residing nor 'found' therein—in which case the process may be issued to and served in a district in which the corporation either resides or is 'found'; and, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein in any substantial character." 273 U.S. at 372–373, 47 S.Ct. at 403.

Thus, what is required to indicate transaction of business for purposes of venue in antitrust actions is less than what is necessary to meet the more stringent requirement of "carrying on business," which is the criterion for jurisdiction, as well as the test of venue embraced in the word "found." Stern Fish Company v. Century Seafoods, Inc., 254 F.Supp. 151 (E.D.Pa.1966); Ohio-Midland Light & Power Co. v. Ohio Brass Co., 221 F.Supp. 405 (S.D.Ohio 1962); Raul International Corporation v. Nu-Era Gear Corporation, 28 F.R.D. 368 (S.D.N.Y. 1961). Addition of the transaction of business test was intended by Congress to relieve persons injured by antitrust violations from going to distant forums to recover from the wrongdoer. As the Court said in United States v. Scophony Corporation, supra:

"Thereby it relieved persons injured through corporate violations of the antitrust laws from the 'often insuperable obstacle' of resorting to distant forums for redress of wrongs done in the places of their business or residence. A foreign corporation no longer could come to a district, perpetrate there the injuries outlawed, and then by retreating or even without retreating to its headquarters defeat or delay the retribution due." 333 U.S. at 808, 68 S.Ct. at 862.

In the present case defendant Cayuga has never been in this District, neither at the time of the injuries complained of nor at the present time. Whatever injuries may have been perpetrated in this District were accomplished by Cayuga's alleged coconspirators to plaintiffs other than those in the instant case. At the hearing on Cayuga's motion counsel for plaintiffs conceded that Cayuga has never transacted business here. Nor is this defendant an inhabitant of this District and, in addition, it cannot be found here. Plaintiffs argue, however, that venue is nonetheless appropriate in this District under the coconspirator theory, or the target theory.

The coconspirator theory is this: Each participant in a conspiracy is an agent

for other coconspirators and the transaction of business in a district by one coconspirator sustains venue in that district in an action against other coconspirators. The genesis of this theory is the Ninth Circuit's decision in Giusti v. Pyrotechnic Industries, 156 F.2d 531 (9th Cir. 1946). In *Giusti*, plaintiff's antitrust action was brought against a Delaware corporation, Triumph, which was an association of corporations manufacturing fireworks, which corporations were also defendants. These corporations were from several States, including California, the district of suit. Plaintiff's complaint centered on the years 1935 and 1936 and charged defendants with conspiring to fix the prices of fireworks and monopolizing the industry. Defendant Triumph had actually transacted business within the State, but apparently this business commenced subsequent to 1935 and 1936. See Independent Productions Corporation v. Loew's, Inc., 148 F.Supp. 460, 464 (S.D.N.Y.1957). In 1943 Triumph filed a certificate of withdrawal from interstate business with the California Secretary of State, which provided, pursuant to State statute, that Triumph consented to service of process upon the Secretary of State in any action upon a liability incurred within the State prior to withdrawal. Plaintiff in *Giusti* duly served the Secretary but Triumph objected, contending that any liability to plaintiff was incurred not by it but by its alleged coconspirators. Further, Triumph argued that the monopolistic activities of the coconspirators did not constitute transaction of business. The Court rejected these arguments, holding (1) that the coconspirators were Triumph's agents and (2) that the acts of the conspirators directed toward securing a monopoly were transaction of business. By upholding the challenged service the Court thus ruled that any liability which Triumph incurred to plaintiff through its conspirator-agents was a liability incurred through the transaction of business within the State. Triumph also raised venue objections but the Court did not consider § 22 of the Clayton Act. Rather, it took the view that by filing the certificate of withdrawal and designating an agent for service of process Triumph waived all objections to venue.

From this background, several factors emerge which suggest that *Giusti* does not directly support the unqualified proposition that transaction of business by one coconspirator subjects all participants to venue in the district where one coconspirator transacts business. Of prime significance is the fact that the Court was interpreting a California statute which related to jurisdiction and not to venue. Section 22 of the Clayton Act was not involved in the decision. Moreover, Triumph itself had actually transacted business in California. In addition, there is the fact that Triumph was a corporate association composed of the other defendants in the case, including California corporations. Such a situation lends itself more readily to a holding that the local conspirators were Triumph's agents than a case where there are separate entity conspirators.

Despite the above mentioned factors, some district court decisions in the Ninth Circuit have embraced the coconspirator theory in reliance on *Giusti*. See Steiner v. Twentieth Century-Fox Film Corp., 140 F.Supp. 906 (S.D.Cal. 1953). In three other cases the courts declined to rule upon defense motions challenging venue and service until after further evidence was adduced bearing upon the foreign corporation's participation in the alleged conspiracy. See Ziegler Chemical & Mineral Corp. v. Standard Oil Co., 39 F.R.D. 241 (N.D.Cal. 1962); State of California v. Brunswick Co., 32 F.R.D. 36 (N.D.Cal. 1961); De Golia v. Twentieth Century-Fox Film Corp., 140 F.Supp. 316 (N.D.Cal.1953). In Haleiwa Theatre Co., Ltd. v. Forman, 37 F.R.D. 62 (D.Hawaii 1965), the district court indicated that if it were to consider the matter on a clean slate it would consider the *Giusti* coconspirator theory simply dicta. The Court, however, felt obliged to follow the other Ninth Circuit district court decisions following the theory. A few district

court cases outside the Ninth Circuit have expressed a favorable view of the coconspirator theory. Riss & Co. v. Association of Western Railways, 159 F. Supp. 288 (D.D.C.1958); Ross-Bart Port Theatre v. Eagle Lion Films, 140 F.Supp. 401 (D.Va.1954); Don-George, Inc. v. Paramount Pictures, 111 F.Supp. 458 (W.D.La.1951).

Recently the Ninth Circuit had occasion to reconsider the *Giusti* case, but declined to do so because the issue was not ripe for review. American Concrete Agricultural Pipe Ass'n v. No-Joint Concrete Pipe Co., 331 F.2d 706 (9th Cir. 1964), was an antitrust suit against defendant Pipe Association, a non-profit membership corporation whose principal place of business was in Chicago. The action was brought in California, but the Association moved to dismiss for lack of venue. The motion was denied on two grounds. First, the district court accepted the view that *Giusti* established that participation as a coconspirator was sufficient transaction of business to warrant venue in the district. Secondly, the Court took the position that after the evidence developed, plaintiff might be able to show that defendant association directly transacted business in California. Defendant sought review by way of mandamus in the Ninth Circuit, but the Court refused to reconsider *Giusti* because the second basis for the district court's decision was adequate. The Court said:

"Whatever may be the merits of the district court's action in denying the motions on the basis of Giusti v. Pyrotechnic Industries, Inc., the second ground of such denial—that there may be venue apart from Giusti under facts not yet resolved—is not ripe for review at this time. When the facts are developed in the evidence and found by the court, it may turn out that this basis for venue is adequate. It follows that any consideration of the Giusti phase of the venue question is premature and may even become moot." 331 F.2d at 710.

The only other Circuit Court decision to consider the coconspirator theory is Bertha Building Corporation v. National Theatres Corporation, 248 F.2d 833 (2d Cir. 1957), cert. denied, 356 U.S. 936, 78 S.Ct. 777, 2 L.Ed.2d 811 (1958). In that case the Second Circuit disapproved the theory, stating:

"We cannot bring ourselves to accept the suggestion in Giusti v. Pyrotechnic Industries, 9 Cir., 156 F.2d 351, that because of the presence within the jurisdiction of one co-conspirator all foreign corporations which are alleged to be co-conspirators are amenable to process. We think such doctrine inherently unsound and in conflict with the later pronouncement in Bankers Life, supra." 248 F.2d at 836.

Banker's Life & Casualty Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953), referred to in the *Bertha* case, involved the question of whether mandamus was an appropriate remedy to vacate an order transferring an action on the ground of improper venue. In that treble damage action, instituted in Florida, one defendant was the Georgia Commissioner of Insurance, who was personally served in Florida. The District Court ruled that venue in Florida was improper, rejecting plaintiff's argument that the acts of coconspirators there rendered the Georgia Commissioner susceptible to suit in Florida. While not adjudicating the issue, the majority opinion indirectly suggests the Supreme Court's disapproval of the coconspirator theory:

"We note additionally that the petitioner has not met the burden of showing that its right to issuance of the writ is 'clear and indisputable.' * * While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof, Congress by 15 U.S.C. § 15, placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defend-

ants, unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally. Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute." 346 U.S. at 384, 74 S.Ct. at 148.

The dissenting justices expressed more directly their views on the theory:

"If we now had to decide whether a co-conspirator as such is an 'agent' for purposes of venue under 15 U.S.C. § 15, it cannot be doubted that we would have to conclude that the district judge was right in finding that the Georgia Commissioner could not be kept in the suit. Once it is clear that the Georgia defendant has the right to be let out, all discussion of the limits of mandamus becomes irrelevant and gratuitous."

Several lower court cases rejecting the coconspirator theory have relied upon these expressions of the Supreme Court in *Holland*. See, e. g., Roberts Brothers, Inc. v. Kurtz Bros., 231 F.Supp. 163 (D. N.J.1964); Ohio-Midland Light & Power Co. v. Ohio Brass Co., 221 F.Supp. 405 (S.D.Ohio 1962); Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd., 210 F.Supp. 930 (D.Utah 1962). Rejecting the theory on the ground that mere allegations of conspiracy in a complaint should not be the test of venue are Interamerican Refining Corporation v. Superior Oil Co., 224 F.Supp. 35 (S.D. N.Y.1963), and Bruner v. Republic Acceptance Corporation, 191 F.Supp. 200 (E.D.Ark.1961). Other cases express doubt that *Giusti* really stands in support of the theory. See Goldlawr, Inc. v. Shubert, 169 F.Supp. 677 (E.D.Pa.1958); Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F.Supp. 936 (N.D. Ill.1962). In the last cited case Judge Robson quoted from Periodical Distributors, Inc. v. The American News Co., Inc., CCH Trade Reg.Serv. Par. 70,011:

" 'Although the *Giusti* case has been cited for the proposition that once acts of conspiracy are alleged to have taken

place within the district venue will lie, this is the result of too broad a reading of the case. In fact, the situation was that the acts alleged, in addition to being overt acts in fulfillment of a conspiracy and acts of monopolization, were themselves the conduct of business. The acts alleged, and apparently proved were coincidental to those necessary to establish that the defendant was transacting or doing business within the district. Thus the case stands for no more than that where the acts of conspiracy and monopolization are identical with the business of the corporation, then if the plaintiff sustains his burden of jurisdictional proof, he has, in fact, established that the defendant is doing business or transacting business, and that venue is properly laid.' " 208 F.Supp. at 942.

As indicated above, this analysis of *Giusti* seems more in line with what the court was actually there deciding. Further, the *Holland* opinion suggests that the Supreme Court would not be receptive to the theory. Additionally, in United States v. National City Lines, Inc., 334 U.S. 573, 68 S.Ct. 1169, 92 L.Ed. 1584 (1948), the Court said:

"Congress therefore was not indifferent to possibilities of abuse involved in the various proposals for change. Exactly the opposite was true. For the broader proposals were not rejected because they gave the plaintiff the choice. They were rejected because the choice given was too wide giving plaintiffs the power to bring suit and force trial in districts far removed from the places where the company was incorporated, had its headquarters, or carried on its business. *In adopting § 12 Congress was not willing to give plaintiffs free rein to haul defendants hither and yon at their caprice."* 334 U.S. at 587–588, 68 S.Ct. at 1177. (Emphasis added.)

If venue could be established by merely alleging that a corporate defendant participated in a conspiracy, some alleged members of which transacted business in the district, antitrust plaintiffs would

then have the power to force suit in distant, inconvenient forums, a result apparently unintended by Congress. While the plaintiff might be required to show that one member of the alleged conspiracy transacted business in the district, still the place of venue would depend upon mere allegations that the company transacting business conspired with the defendant sought to be sued in the district. Proof of the conspiracy to support venue would be proof on the merits and thus a defendant might be forced to participate in a trial, the result of which could establish that the forum was not appropriate. While some courts have postponed decision on the question of venue until after trial, De Golia v. Twentieth Century-Fox Film Corp., State of California v. Brunswick Co., Ziegler Chemical & Mineral Corp. v. Standard Oil Co., supra, this Court is inclined to the view expressed in Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd., supra. There the Court declined to postpone determination of venue until after trial, noting that as to every alleged conspiracy such a procedure would allow the case to go forward against a foreign corporation just as if venue were secure.

Plaintiffs in the instant case argue that the express purpose of the Clayton Act's amendment to § 7 of the Sherman Act was to prevent a conspirator from hindering or preventing recovery by compelling plaintiffs to seek out defendants separately in remote jurisdictions. Further, plaintiffs argue that consideration should be given to the fact that other rock salt treble damage actions are pending in this District pursuant to a national program of coordination and consolidation. See State of Michigan v. Morton Salt, supra, 259 F.Supp. at 42, n. 1. The Supreme Court has repeatedly recognized that the Clayton Act amendments were designed to widen a plaintiff's choice of venue. At the same time, the Court has also acknowledged that in many cases venue would not lie in one district for all defendants. In Banker's Life & Casualty Co. v. Holland, supra, 346 U.S. at

384, 74 S.Ct. at 149, the Court said that "It [Congress] must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally." In the electrical equipment antitrust cases one defendant, the Schwager-Wood Corporation, was joined as a defendant in several districts, but the coconspirator theory was rejected as a basis for venue. See Commonwealth Edison Co. v. Federal Pacific Electric Co., 208 F.Supp. 936 (N.D. Ill.1962); Guernsey-Muskingum Electric Co-Op. Inc. v. Federal Pacific Electric Co., 221 F.Supp. 409 (S.D.Ohio 1962); Public Service Co. of New Mexico v. Pacific Electric Co., 210 F.Supp. 1 (D.N. Mex.1962). In the Western District of Texas the Court did find that defendant Schwager-Wood was transacting sufficient business to support venue there. Lower Colorado River Authority v. Westinghouse Electric Corp., 219 F.Supp. 743 (W.D.Tex.1963).

It is quite evident that coordinated programs for private antitrust litigation involving a single industry would be facilitated by a venue provision permitting suit in a single district. In 15 U.S. C. § 5, Congress did establish a procedure whereby several defendants could be brought into the same district. Applicable only in Government civil actions, it provides:

"Whenever it shall appear to the court before which any proceeding under section 4 of this title may be pending, that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not; and subpoenas to that end may be served in any district by the marshal thereof."

A comparable provision would be desirable for private antitrust actions, but since Congress did not extend § 5 to such suits, this Court does not feel justified in incorporating it into § 22 via the coconspirator theory. Therefore, plaintiff's action against Cayuga is not

properly venued in this District under such a theory.

■ Plaintiffs have, however, advanced a second theory for upholding venue: the target theory. In essence, this theory would uphold venue in any district which is the target of an illegal conspiracy or any district in which the conspiracy brought about injuries. Here again a Ninth Circuit decision evoked the theory. Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n, 344 F.2d 860 (9th Cir. 1965), involved a California private antitrust action against a Tennessee corporate association. Upholding venue under the Clayton Act, the Court noted that defendant "intentionally brought about in California the very injuries now complained of." Yet the fact that California, the plaintiff's residence, was the place where the injuries were inflicted was only one of the factors relied upon by the Court. Among the other indicia that defendant association was transacting business in California were (a) members residing in the district, (b) a Regional Vice President in the district, and (c) the defendant Association sent its "Judges" into the district for exhibitions. Because of these and other additional factors, the Tennessee Walking Horse case does not rest upon the broad principle that any district which is the target of a conspiracy is a proper place to lay venue. Moreover, the defendant sought to be sued in California was allegedly the very defendant which perpetrated the acts directly causing injury there. In the instant case plaintiffs contend that the conspiracy of which plaintiff was a part had as one of its targets public agencies within this District. A determination of the factual basis for such a contention would involve the merits of the action. In addition, to apply the target theory in this situation would require incorporation of the coconspirator theory. Whatever injury the alleged conspiracy brought about in Minnesota was not the direct act of defendant Cayuga, which plaintiffs concede was never in the District even for meetings with alleged coconspirators. To require Cayuga to defend in this District on the basis of the target theory means that coconspirators who might have caused injury here must be deemed Cayuga's agents. In addition, the alleged injuries sustained by the present plaintiffs presumably occurred in West Virginia. That Congress wanted to allow venue to be placed where the cause of action arose is suggested by the Supreme Court in United States v. National City Lines, supra. Discussing the Clayton Act amendments, the Court said:

"The basic aim of the advocates of change was to give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries. At first they were not much concerned with the exact formulation of the language to accomplish this, several formulas being proposed from time to time. But they were convinced that restricting the choice of venue to districts in which the defendant 'resides or is found' was not adequate to insure that the suit could be brought where the cause of action arose, and therefore insisted on change in order to assure that result." 334 U.S. at 583, 68 S.Ct. at 1175.

This avowed Congressional intention might justify subjecting Cayuga to suit in West Virginia, but that is a much different matter from allowing West Virginia plaintiffs to sue Cayuga in Minnesota because its alleged coconspirators allegedly caused injury to other parties in Minnesota. In short, there is nothing in the statutory language which authorizes application of the target theory to the instant case.

The Court is aware of the difficulties which a private treble damage plaintiff may have in getting before the same court all members of an alleged nationwide conspiracy. However desirable that may be, both from the standpoint of the litigants and the effective administration of complex actions, the venue

statute is not so designed. Having concluded that the statute cannot accommodate either the coconspirator or the target theory, defendant's motion will be granted.