**GIUSTI v. PYROTECHNIC INDUSTRIES, Inc., et al.**

**No. 11189.**

Circuit Court of Appeals, Ninth Circuit.

June 27, 1946.

Rehearing Denied Aug. 7, 1946.

Chellis Carpenter, of San Francisco, Cal., for appellant.

Gregory, Hunt, Melvin & Faulkner, Harold C. Faulkner, and Robert Beale, all of San Francisco, Cal., for appellees.

Before DENMAN, BONE and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment dismissing the complaint below as to appellee Triumph Fusee & Fireworks Company, a corporation, hereinafter called Triumph, and an order quashing the service of a summons on the Secretary of State of the State of California as the claimed agent of Triumph.

The complaint [1] alleged that appellant at all relevant times was engaged in the business of buying and selling fireworks in the State of California. Triumph, a Delaware corporation, is an association of fireworks manufacturing corporations composed of the other defendants below, a New York, Arizona, Massachusetts, Connecticut, New Jersey, two Maryland, and several California corporations, producing approximately 85% of the total production of fireworks in the United States. All are engaged in interstate commerce in fireworks, and prior to the charged combination to fix the price of fireworks were in competition with one another. Triumph and these other corporations are charged with combining to perform and performing on or about the 12th day of April, 1935, the following acts:

"(a) Agreed to fix and maintain, and have fixed and maintained, uniform prices in the sale of fireworks to jobbers of fireworks in the United States to the particular grave damage and detriment of the plaintiff.

"(b) Agreed to fix and maintain and have fixed and maintained, uniform discounts in the sale of fireworks by manufacturers to jobbers of fireworks in the United States to the particular grave damage and detriment of the plaintiff.

"(c) Agreed to fix and maintain, and have fixed and maintained uniform prices and discounts at which jobbers of fireworks should sell to retailers in the United States to the particular grave damage and detriment of the plaintiff.

"(d) Agreed to designate, and have so designated, what concerns or individuals should and/or should not be sold by manufacturers of fireworks as jobbers to the particular grave damage and detriment of the plaintiff.

"(e) Organized and held meetings of groups of fireworks jobbers in various parts of the United States according to the particular subdivisions of the United States in which they were situated, to devise means of asserting influence, pressure, coercion, and other means of inducing, requiring and coercing these fireworks jobbers to abide by and adhere to the agreements, combinations and conspiracies of the defendants to the particular grave damage of the plaintiff.

"(f) Procured promises and agreements from various jobbers of fireworks in the United States pursuant to those acts in paragraph (e) as above, to the particular grave damage and detriment of the plaintiff.

"(g) Maintained the continuance of all those acts mentioned in paragraphs (a), (b), (c), (d), (e), and (f), as above, by diverse methods of policing manufacturers, jobbers, and retailers of fireworks in the United States, to the particular grave damage and detriment of the plaintiff.

"(h) Agreed to compile and maintain lists, and have compiled and maintained lists of those concerns which should be, and are, recognized as chain stores which are allowed certain special discounts from the defendants in addition to those granted other purchasers to the particular grave damage and detriment of the plaintiff.

"(i) Agreed to fix and maintain and have fixed and maintained minimum retail prices of fireworks throughout the United States to the particular grave damage and detriment of the plaintiff.

"(j) Agreed to refuse to sell, and have refused to sell, fireworks to certain concerns, thus boycotting said concerns and cutting off or seriously impairing their supply of fireworks."

The complaint continues, concerning further acts of the conspirators extending over six months' time

"That on or about January 15, 1936, said defendants pursuant to said agreements, combinations and conspiracies, caused to be organized an association of those defendants which are sued herein under their true names as had Pacific Coast establishments; that said association was known as the Pacific Coast Fireworks Distributing Association, and held meetings at San Francisco between January 15, 1936, and January 30, 1936; that at one of said meet-

---

[1] The complaint accounts for its filing in 1944 concerning transactions in 1935 and 1936, that appellant became insane and was committed to an insane asylum on January 10, 1936, and did not recover until his discharge on January 8, 1943. During his insanity his business was conducted by his wife as his agent.

ings the association adopted a resolution wherein it was resolved that the association contact all eastern manufacturers of fireworks, for the purpose of preventing any further sale of fireworks to plaintiff or his agent; that within six months thereafter, as plaintiff is informed and believes and accordingly alleges, said association had contacted not only such eastern manufacturers, but also all fireworks manufacturers in the United States, and had requested that plaintiff be blacklisted by each of them; that at all times thereafter plaintiff, * * * was unable to purchase any fireworks for his said business, all to plaintiff's damage in the sum of Fifty Thousand Dollars ($50,000.00)."

On December 7, 1943, Triumph filed in the office of the Secretary of State of California its Certificate of Withdrawal from Intra-State Business in California, under the provisions of Section 411 of the Civil Code of the State of California, which Certificate stated, among other matters, in accordance with that Code requirement "That said defendant consents that process against it in any action upon any liability or obligation incurred within this State prior to the filing of the Certificate of Withdrawal may be served upon the Secretary of State."

Appellant served upon the Secretary of State of California a copy of his complaint and the summons thereon issued by the District Court. On Triumph's motion, the District Court quashed the service of the summons and dismissed the complaint as to Triumph.

Triumph asserts this was not error, claiming (1) that under the California law the Secretary of State's agency is confined to suits upon liabilities created by Triumph only in "business transacted" by it in that state; (2) that the six months' activity of Triumph's coconspirators in destroying appellant's business for the benefit of their monopoly is not transacting business within the California law; and (3) that Triumph did nothing in California, though its coconspirators, as its agents, so destroyed appellant's California business.

We do not agree. The California law requiring foreign corporations to create an agency for acceptance of process in cases of its liability for acts committed in California before its departure from the State is stated in Section 411 (2) of the Civil Code to be

"411. Surrender of right to transact intrastate business.

"A foreign corporation which has qualified to transact business in this State may surrender its right to engage in such business within the State by filing in the office of the Secretary of State a certificate executed and acknowledged by its president or vice-president and secretary or treasurer, setting forth: * * *

"(2) That it consents that process against it in any action upon any liability or obligation incurred within this State prior to the filing of the certificate of withdrawal may be served upon the Secretary of State."

The liability to appellant created by the conspirators is clearly within this statutory provision. Triumph claims that under a later Code section, amending Section 406a of the Civil Code the liability of Section 411 is narrowed to one arising from "business transacted" within the State. That section reads

"406a. Service of process.

" * * * A foreign corporation which has transacted intrastate business in this State and has thereafter withdrawn from business in this State may be served with process in the manner provided in this section in any action brought in this State arising out of such business, whether or not it has ever complied with the requirements of section 405, Civil Code." St.1937, Chap. 192.

■ An action "brought in this state" includes an action in the federal courts in the state based on federal law. Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 10 Cir., 100 F.2d 770, approved in Neirbo Co. v. Bethlehem Steel Co., 308 U.S. 165, 175, 60 S.Ct. 153, 84 L.Ed. 167, 128 A.L.R. 1437.

■ The continued acts of the conspirators in California to secure a monopoly is transacting business there.

(1) It is strongly arguable that 406a is not a limitation on the general term "liabil-

ity" of section 411. (2) However, assuming such limitation, the question is what was the "business" which the California Legislature had in mind when it sought to protect California business men from acts, here continued acts, of foreign corporations committed in the state and creating a liability there before Triumph's departure from its jurisdiction. Triumph states it knows of no California decision dealing with this question, and we are cited to none.

Prior to the enactment of antimonopoly acts by the federal and state Legislatures, it was a usual business transaction to combine to attempt to destroy a competitor and secure a monopoly in the field of the business of the combining group. Such business activity is now made illegal by such legislation, but because it became a wrongful business activity it is none the less business transacted. The continuing acts of the conspirators extending over six months, is as much business as if by agreement in violation of the anti-trust acts all the conspirators had consistently underbid appellant and by that wrongful method destroyed his business by preventing him making any sales in California. In a suit under the Clayton Act, § 12, 15 U.S.C.A. § 22, a Michigan corporation sold goods to Massachuetts companies which resold in Massachusetts. It occasionally sends agents into Massachusetts to "high pressure" the Massachusetts companies in their intrastate sales. Such occasional visits of these Michigan high pressure men were held to be doing business in Massachusetts. Jeffery-Nichols Motor Co. v. Hupp, 1 Cir., 46 F.2d 623, 625. To the extent that the high pressure salesmanship was successful it took the business from competing manufacturers. In the instant case, Triumph, through its conspiring agents, had pressure high enough to take appellant's intrastate business away from him. Triumph was as such transacting business in California as the Michigan company in Massachusetts. As was stated by the Supreme Court in Eastman Co. v. Southern Photo Co., 273 U.S. 359, 373, 47 S.Ct. 400, 403, 71 L.Ed. 684, even of interstate business, "We are further of opinion that a corporation is none the less engaged in transacting business in a district, within the meaning of this section—which deals with suits respecting unlawful restraints upon interstate trade—because of the fact that such business may be entirely interstate in character and be transacted by agents who do not reside within the district." We hold this to be the law in California as to the intrastate business of destroying appellant's business there.

■ (3) The California members of the conspiracy were agents of Triumph in the conspiracy's attempt to destroy appellant's business. Triumph was in California acting through such agents, just as it would have been if it had employed a group of agents there continuously to underbid on sales to appellant's customers. Hence this case is not like Morris & Co. v. Skandinavia Ins. Co., 279 U.S. 405, 408, 49 S.Ct. 360, 73 L.Ed. 762, nor Steinberg v. Aetna Fire Ins. Co., D.C. 50 F.Supp. 438, 439, where the liability claimed arose from transactions without the state. If the case of Westor Theatres v. Warner Bros., D.C.E.D.N.J., 41 F.Supp. 757, 760, holds to the contrary, we find no merit in its reasoning. To follow it would be to frustrate the purpose of the Congressional legislation against monopolistic conspiracies in many cases. It is not the law in California. We hold the service on the Secretary of State is within the California law and that the order quashing it is reversed.

■ Triumph also appeared and moved the dismissal of the action as to it. We at first regarded this as a general appearance, making unnecessary the consideration of the service on the Secretary of State, and decided the case on that ground. Further consideration led us to conclude that the motion was addressed solely to the question of venue and we set aside our judgment. Though the District Court did not state its reason for dismissing the suit, we assume it was on that ground. That question becomes moot, since it is waived by the defendant corporation consenting to becoming a party to the suit by its creation of an agent in the state to accept the service of process which was served on it. Neirbo v. Bethlehem Steel Co., 308 U.S. 165, 170, 174, 175, 60 S.Ct. 153, 84 L.Ed. 167, 128 A. L.R. 1437; Oklahoma Packing Co. v. Okla-

homa Gas & Electric Co., supra. Since the complaint states a plain case of violation of the anti-trust acts and Triumph so became a party to the action, the District Court had jurisdiction of both the subject matter and the person sued and erred in dismissing it.

The order quashing the summons and dismissing the action as to Triumph is reversed.