**PIEDMONT LABEL COMPANY,**
Appellant,

v.

**SUN GARDEN PACKING COMPANY,**
Appellee.

No. 77–2088.

United States Court of Appeals,
Ninth Circuit.

June 5, 1979.

---

Phyllis Kay Dryden, John R. Reese, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for appellant.

Darrell Salomon, Alioto & Alioto, San Francisco, Cal., for appellee.

Before BROWNING and HUFSTEDLER, Circuit Judges, and BARTELS,* District Judge.

HUFSTEDLER, Circuit Judge:

The question presented is whether venue in a private antitrust suit may be founded solely on allegations that a defendant was a member of a conspiracy and that a co-conspirator performed acts in the forum district. This issue has been troublesome ever since the Supreme Court in *Bankers Life & Casualty Co. v. Holland* (1953) 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106, disapproved an attempt to base venue on vicarious responsibility of one co-conspirator for the acts of another. Because *Bankers Life* has effectively undermined the co-conspirator theory of venue, we now expressly reject any implication in *Giusti v. Pyrotechnic Industries* (9th Cir. 1946) 156 F.2d 351, that members of a conspiracy, as agents of one another, "transact business" for venue purposes in any district where one of them transacts business.

I

Piedmont Label Company ("Piedmont") brings this interlocutory appeal, pursuant to 28 U.S.C. § 1292(b), from the denial of a motion for summary judgment based on improper venue. Piedmont is one of the five producers of lithograph paper labels who are defendants in a private antitrust suit filed by Sun Garden Packing Company ("Sun Garden") in the Northern District of California. Sun Garden charges that Piedmont and the other defendants conspired to restrain trade and commerce in lithograph paper labels by price-fixing, bid-rigging, and customer allocation schemes in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. In its amended complaint, Sun Garden alleged that: "[e]ach defendant maintains an office, transacts business and is found within this district . . . . Many of the unlawful acts done pursuant to and in furtherance of the alleged combination and conspiracy and commerce described hereinafter is carried on, in part, within this district."

In support of its motion for summary judgment based on improper venue, Piedmont presented affidavits indicating that it is a Virginia corporation that has never done business in California and that it has never maintained any office, agent, or property in California. Although Piedmont has received in Virginia a few purchase orders mailed by customers in California, all but $535.61 worth of products under those orders were shipped and billed to plants located outside California. As an accommodation to a customer in Louisiana, Piedmont also sent one bill for $304.10 to a California firm to cover the cost of labels shipped to its Louisiana customer.

Sun Garden did not dispute any of the facts presented by Piedmont in support of its motion for summary judgment. Instead, Sun Garden chose to rely on the co-conspirator theory of venue and the alleged vitality of *Giusti v. Pyrotechnic Industries, supra.* Sun Garden argued that venue was proper because, under *Giusti*, a

---

* Honorable John R. Bartels, Senior United States District Judge, Eastern District of New York, sitting by designation.

resident member of an antitrust conspiracy can be considered an agent of an out-of-state member of the conspiracy, so that the out-of-state conspirator can be considered to have transacted business in California. Despite the Supreme Court's criticism of the co-conspirator theory of venue in *Bankers Life & Casualty Co. v. Holland, supra,* Sun Garden argued that *Giusti* remained good law in the Ninth Circuit. The district court agreed and denied Piedmont's motion for summary judgment "solely on the authority of *Giusti.*"[1] The court's order was then certified for this interlocutory appeal.

## II

The venue requirements governing private antitrust actions are set forth in three separate statutes. The general venue statute, 28 U.S.C. § 1391, provides in pertinent part:

"(b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

"(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes." (28 U.S.C. §§ 1391(b) & (c).)

Special venue provisions for antitrust suits are outlined in the Clayton Act. Section 4 of the Clayton Act, 15 U.S.C. § 15, provides in pertinent part:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, . . . ." (15 U.S.C. § 15.)

Venue provisions for antitrust suits against corporations are established by section 12 of the Clayton Act, 15 U.S.C. § 22, which provides:

"Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business . . . ." (15 U.S.C. § 22.)

It is undisputed that Piedmont is not "incorporated" or "licensed to do business" in California, and that it does not "reside" in and is not "found" in California. Sun Garden maintains that venue is proper in the Northern District of California because, under the co-conspirator theory of venue, Piedmont may be deemed to have an "agent" in the district and to "transact business" in the district. According to Sun Garden, our decision in *Giusti* establishes that Piedmont's resident co-conspirators are to be deemed Piedmont's agents and that acts performed by co-conspirators in the district can be deemed to be transaction of business by Piedmont.

A review of more than three decades of experience with the co-conspirator theory of venue convinces us that, regardless of any strength it once may have had, Sun Garden's theory of venue is no longer tenable in this Circuit. The co-conspirator theory of venue was given what has been called its "illegitimate birth" by a decision of this court more than thirty years ago in *Giusti v. Pyrotechnic Industries, supra,* 156 F.2d 351.[2] In *Giusti,* a California fireworks distributor charged a group of fireworks manufacturers, including Triumph, a Delaware corporation, with a price-fixing conspiracy. The complaint charged that the fireworks manufacturers had organized an association to control the sale of fireworks and that the

---

1. The district judge recognized that substantial doubt had been cast on the validity of the co-conspirator theory of venue, but he expressed the belief that *Giusti* was still controlling authority in the Circuit, in spite of *Bankers Life.* He concluded that "if there's going to be a change in the law in that respect . . . it ought to be done at the Ninth Circuit level . . . . Let them worry about it up there. They started it."

2. Byrnes, "Bringing the Co-Conspirator Theory of Venue Up-to-Date and into Proper Perspective," 11 *Antitrust Bulletin* 889, 892 (1966).

association had held a meeting in San Francisco at which the plaintiff was blacklisted.

At the time of the alleged conspiracy, Triumph was not regularly conducting business in California. Triumph later qualified to do business in the state. After doing business in California for several years, Triumph withdrew from the state. Pursuant to section 411 of the California Civil Code, Triumph filed a certificate of withdrawal from intrastate business with the California Secretary of State. The certificate provided that Triumph consented to service of process on the California Secretary of State in any subsequent action based upon a liability incurred in California prior to Triumph's withdrawal.

The plaintiff in *Giusti* served Triumph through the California Secretary of State. Triumph moved to quash service of the summons and to dismiss the complaint on the grounds that it had not transacted any business in California during the alleged conspiracy. The district court granted Triumph's motion and an appeal was taken to this court. We reversed, holding that Triumph had waived objections to venue by appointing the Secretary of State as its agent. (156 F.2d at 354.) In the course of the opinion, however, we also said that service was proper because the "continued acts of the conspirators in California" constituted "transacting business" in California within the meaning of the California statute governing service of process. (156 F.2d at 353–54.) Any suggestion that we approved the co-conspirator theory of venue was *dictum*. We would nevertheless hesitate to overrule it by a panel decision if the Supreme Court had not intervened.

Seven years after our decision in *Giusti*, the Supreme Court undercut the co-conspirator theory of venue in *Bankers Life & Casualty Co. v. Holland* (1953) 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106. In *Bankers Life* a district court had rejected the co-conspirator theory of venue and entered a severance

and transfer order on the ground of improper venue. The Supreme Court was asked to vacate the order by writ of mandamus. Although the actual question decided by the Court was that mandamus was not an appropriate remedy to vacate a severance and transfer order, the Justices unanimously expressly disapproved the co-conspirator theory of venue. The majority observed that:

> "While a criminal action under the antitrust laws lies in any district where the conspiracy was formed or in part carried on or where an overt act was committed in furtherance thereof, Congress by 15 U.S.C. § 15 placed definite limits on venue in treble damage actions. Certainly Congress realized in so doing that many such cases would not lie in one district as to all defendants, unless venue was waived. It must, therefore, have contemplated that such proceedings might be severed and transferred or filed in separate districts originally. Thus petitioner's theory has all the earmarks of a frivolous albeit ingenious attempt to expand the statute." (346 U.S. at 384, 74 S.Ct. at 149 (footnote omitted).)

The three dissenting Justices agreed that the co-conspirator theory of venue was "frivolous" and argued that the mandamus question should not have been considered when the severance order was based on such "obviously compelling" reasons (346 U.S. at 388, 74 S.Ct. 145 (Frankfurter, J., dissenting).)[3]

In the wake of *Bankers Life*, district courts in this Circuit were faced "with the metaphysical task of balancing court of appeals dictum with Supreme Court dictum." (*California Clippers, Inc. v. United States Soccer Football Ass'n* (N.D.Cal.1970) 314 F.Supp. 1057, 1066.) Courts in this Circuit initially elected to follow *Giusti*'s supposed approval for the co-conspirator theory of venue. (*DeGolia v. Twentieth Century-Fox Film Corp.* (N.D.Cal.1953) 140 F.Supp. 316; *California v. Brunswick Co.* (N.D.Cal.1961) 32 F.R.D. 36.) Elsewhere, rejection of *Gi-*

---

**3.** Justice Frankfurter observed in dissent: "If we now had to decide whether a co-conspirator as such is an 'agent' for purposes of venue under 15 U.S.C. § 15, it cannot be doubted that we would have to conclude that the district judge was right in [holding that a co-conspirator is not an agent]." (346 U.S. at 386, 74 S.Ct. at 150 (Frankfurter, J., dissenting).)

*usti* and the co-conspirator theory of venue has been nearly universal. The Second Circuit in *Bertha Building Corp. v. National Theatres Corp.* (2d Cir. 1957) 248 F.2d 833, 836, declared *Giusti* and the co-conspirator theory "inherently unsound and in conflict with the later pronouncement in *Bankers Life.*" The Second Circuit has reaffirmed its rejection of the co-conspirator theory of venue (*H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories* (2d Cir. 1967) 384 F.2d 97, 98), and the Fifth Circuit has also rejected the *Giusti* view (*San Antonio Telephone Co. v. American Telephone & Telegraph Co.* (5th Cir. 1974) 499 F.2d 349, 351 n. 3). District courts outside this Circuit have been almost unanimous in rejecting the co-conspirator theory (*Outboard Marine Corp. v. Pezetel* (D.Del.1978) 461 F.Supp. 384, 392; *Hitt v. Nissan Motor Co.* (S.D.Fla.1975) 399 F.Supp. 838, 848; *Call Carl, Inc. v. BP Oil Corp.* (D.Md.1975) 391 F.Supp. 367, 374 n. 7; *Albert Levine Associates v. Bertoni & Cotti* (S.D.N.Y.1970) 309 F.Supp. 456, 461; *Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp.* (E.D.Pa.1968) 291 F.Supp. 252, 261; *West Virginia v. Morton International, Inc.* (D.Minn.1967) 264 F.Supp. 689, 692; *Intermountain Ford Tractor Sales Co. v. Massey-Ferguson, Ltd.* (D.Utah 1962) 210 F.Supp. 930, 933, *aff'd* (10th Cir. 1963) 325 F.2d 713; *Commonwealth Edison Co. v. Federal Pacific Electric Co.* (N.D.Ill.1962) 208 F.Supp. 936, 941; *Bruner v. Republic Acceptance Corp.* (E.D.Ark.1961) 191 F.Supp. 200, 205; *Goldlawr, Inc. v. Shubert* (E.D.Pa.1958) 169 F.Supp. 677, 684, *aff'd* (3rd Cir. 1960) 276 F.2d 614; *Independent Productions Corp. v. Loew's, Inc.* (S.D.N.Y. 1957) 148 F.Supp. 460, 463.)

In the face of this growing rejection of the co-conspirator theory of venue, courts in this Circuit attempted to construe *Giusti* narrowly (*Occidental Petroleum Corp. v. Buttes Gas & Oil Co.* (C.D.Cal.1971) 331 F.Supp. 92, 96–98; *Zeigler Chemical & Mineral Corp. v. Standard Oil of California* (N.D.Cal.1962) 32 F.R.D. 241, 243), or to distinguish it from the cases before them (*Javelin Corp. v. Uniroyal, Inc.* (N.D.Cal. 1973) 360 F.Supp. 251, 252; *California Clippers, Inc. v. United States Soccer Football*

*Ass'n, supra,* 314 F.Supp. at 1065–67; *Haleiwa Theatre Co. v. Forman* (D.Haw.1965) 37 F.R.D. 62, 65). We expressly reserved judgment on the continued vitality of the co-conspirator theory of venue after *Bankers Life* (*Hayashi v. Red Wing Peat Corp.* (9th Cir. 1968) 396 F.2d 13, 15; *American Concrete Agricultural Pipe Ass'n v. No-Joint Concrete Pipe Co.* (9th Cir. 1964) 331 F.2d 706, 710), and other courts viewed the decisions in our Circuit as giving *Giusti* a "critical reading." (*Weinstein v. Norman M. Morris, Corp.* (E.D.Mich.1977) 432 F.Supp. 337, 343.) Most recently, a district court in our Circuit has held that the co-conspirator theory of venue "was permanently laid to rest in *Bankers Life*" (*Williams v. Canon, Inc.* (C.D.Cal.1977) 432 F.Supp. 376, 382), and we have lent approval to a district court's observation that *Giusti* "has been largely discredited." (*Anrig v. Ringsby United* (9th Cir. 1978) 591 F.2d 485, 488–89.)

*Giusti*'s legacy of confusion is now ended. The Supreme Court's rejection of the theory in *Bankers Life* effectively toppled the *Giusti* dictum. Although the Clayton Act increased the possible forums in which antitrust suits against corporations could be heard, Congress did not intend to "give plaintiffs freedom to subject defendants to venue in the forum of their choice." (*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corp., supra,* 291 F.Supp. at 262.) Nor did Congress intend to give private plaintiffs the right "to bring all conspirators into the same forum regardless of venue," for Congress "established detailed venue provisions separately applicable to each defendant." (*Id.*) The co-conspirator theory would defeat the congressional purpose by making the propriety of venue turn on the final decision on the merits in conspiracy cases. We therefore hold that venue in a private antitrust action cannot be solely based on allegations that a defendant was a member of a conspiracy and that a co-conspirator performed acts in the forum district.

### III

Sun Garden argues that even if the co-conspirator theory of venue is no longer accepted in this Circuit, we should

remand this case to the district court to permit Sun Garden to complete discovery into Piedmont's relationship with the forum. If the district court had prevented Sun Garden from presenting evidence of Piedmont's independent relationship to the forum, we would be sympathetic to Sun Garden's argument. The record indicates, however, that Sun Garden chose to rely solely on the co-conspirator theory of venue in the face of Piedmont's evidence that it had no contact with the state of California.[4] Plaintiff had the burden of showing that venue was properly laid in the Northern District of California. (*Hayashi v. Sunshine Garden Products, Inc.* (W.D.Wash. 1967) 285 F.Supp. 632, 633, *aff'd sub nom. Hayashi v. Red Wing Peat Corp.* (9th Cir. 1968) 396 F.2d 13.) It utterly failed to do so. Thus, we need not remand this case to the district court to permit further discovery. (*See Hayashi v. Red Wing Peat Corp., supra*, 396 F.2d at 14; *cf. H. L. Moore Drug Exchange, Inc. v. Smith, Kline & French Laboratories, supra.*)

The district court's order denying appellant's motion for summary judgment based on improper venue is reversed. Because we hold that venue with respect to Piedmont was not properly laid in the Northern District of California, we need not reach Piedmont's contention that it was not subject to personal jurisdiction in the forum.

REVERSED.

BROWNING, Circuit Judge, concurring:

The district court rested the interlocutory order under review "solely on the authority of *Giusti v. Pyrotechnic Industries*, 156 F.2d 351 (9th Cir.) cert. denied 329 U.S. 787 (1946)." I agree that *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379 (1953), has undercut *Giusti.*

Both *Giusti* and *Bankers Life* interpreted and applied the venue provisions of the Clayton Act, 15 U.S.C. §§ 15, 22. Appellee has chosen to rely solely upon these special venue provisions of the Clayton Act and upon *Giusti* both in this court and in the court below.

The general venue statute, 28 U.S.C. § 1391, is also applicable to antitrust suits and may provide a basis for venue when the special venue provisions of the Clayton Act do not. *See, e. g., Ballard v. Blue Shield of Southern West Virginia, Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976); *Board of County Commissioners v. Wilshire Oil*, 523 F.2d 125, 129–30 (10th Cir. 1975); 15 Wright & Miller, Federal Practice & Procedure: Civil § 3818 at 109, 112 (1976); 1 Moore's Federal Practice ¶ 0.144[14.--15] at 1562.

Subsection (b) of section 1391 was added to the statute in 1966, well after *Giusti* and *Bankers Life & Casualty* were decided. It permits a nondiversity civil action to be brought in the district "in which the claim arose." This provision was intended "to assure that at least one venue . . . will be proper as to *all* defendants . . . in a multi-party action." *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1273 (5th Cir. 1978) *quoting* 1 Moore's Federal

---

4. The record indicates that Sun Garden elected to rely solely on the co-conspirator theory of venue in responding to Piedmont's motion for summary judgment. Sun Garden never argued that any independent basis for venue with respect to Piedmont was available. Moreover, the record reveals that the district court did not bar discovery with respect to jurisdictional facts. On September 12, 1975, the district judge ordered all parties "to forthwith diligently attempt to complete any further discovery deemed necessary." (R. 42.) On October 2, 1975, the second pretrial order specified that "[a]ll discovery in these matters is to proceed with diligence, except for those matters covered by the motions for protective orders which are to be heard on October 24, 1975." (R. 45.)

Although the record does not reveal the subjects of the motions for protective orders, on June 4, 1976, the district court denied all motions to stay discovery. (R. 59.) On October 29, 1976, Piedmont gave notice of its motion for summary judgment on the ground of improper venue. Sun Garden, in its memorandum in opposition to Piedmont's motion for summary judgment (filed November 12, 1976), conceded that "[d]iscovery has commenced." (R. 101.) When Piedmont's motion for summary judgment was denied on December 30, 1976, the parties were told by the district judge that there would be no stay of discovery while efforts were made to certify the court's order for an interlocutory appeal. (R.T. 18.)

Practice ¶ 0.142[5.–2] at 1434. *See also Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 710 n. 8, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972); 15 Wright & Miller, *supra,* § 3807 at 39.

Because appellee has chosen to rely solely on the Clayton Act venue provisions, neither the court below nor this court has had occasion to consider the application of 28 U.S.C. § 1391(b) to appellee's claim.