Earl M. EABY, Elmer Martin, Jr., Dr. Ralph Weirich, Luther Earhart, Eli S. Lapp, Russel W. Brong, Lillian Wittle and Richard Brong

v.

John R. RICHMOND, June Richmond, John D. Snavely, Jerry W. Hanwell, George McCarrihan, George Dawson, D'Appolonia Petroleum, Inc., Barrie P. Barrett, P.E., Charles F. Smith, Angelina Nau, American Energy Developers, Inc., and James E. Capin.

Civ. No. 82–3866.

United States District Court,
E.D. Pennsylvania.

March 11, 1983.

William G. Baughman, York, Pa., Arnold Levin, Philadelphia, Pa., for plaintiff.

Geary M. Battistelli, Wheeling, W.Va., Susanna E. Lachs, Philadelphia, Pa., for Richmonds, C.F. Smith, Nau, George Dawson, American Energy Developers.

John P. Brody, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for Barrett.

Edward M. Posner, Philadelphia, Pa., for Capin.

Charles J. Bloom, Philadelphia, Pa., for D'Appolonia Petroleum.

E. Stirling Lathrop and H.S. Ruth, Jr., Philadelphia, Pa., for Smith and McCarrihan.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Asserting that defendants' conduct for almost a decade amounts to a violation of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.,* (RICO), plaintiffs commenced this civil action seeking treble damages for their injuries. Defendants, moving to dismiss, argue that the complaint fails to properly state a RICO claim, that mere allegations of "fraud" and "conspiracy" impermissibly lack factual specificity and that venue is not properly laid in this district. We grant defendants' motions *pro tanto.*

According to the complaint, defendants John and June Richmond acquired leasehold interests in the mineral rights of various properties located in Ohio and West Virginia. For a seven-year period, 1973–1980, the Richmonds, acting through their agent, defendant Snavely, made material misrepresentations when selling fractional interests in these leaseholds to various plaintiffs. During this same time, defendant, American Energy Developers, Inc. (AED) wrote to the leases' co-owners, plaintiffs, and offered to develop the leases.

From 1975–1979, the Securities and Exchange Commission (SEC) investigated the above described transactions and, apparently in reaction to this, the Richmonds and Snavely ceased selling fractional leasehold interests and commenced selling shares of AED stock. Although AED, incorporated by defendants McCarrihan, Dawson, Smith and John Richmond, was not authorized to develop mineral rights or mineral interests, defendants nevertheless represented to prospective shareholders that the corporation would engage in such activities. Further, defendants subverted AED to their own impermissible goals by wrongfully voting the proxy of plaintiff, Richard Eaby and failing to make designated royalty and other payments which were due and owing to other plaintiffs.

The complaint then alleges a litany of purportedly wrongful conduct and includes statements of numerous methods by which various defendants sold stock to named plaintiffs. In any case, in February 1980, Snavely, then acting in his capacity as president of AED, improperly contracted with defendant D'Appolonia Petroleum, Inc. (DPI) which agreed to develop a designated mineral lease. Upon completion of this contractual obligation, DPI submitted an inflated bill to AED. Worse, the work was completed in an unworkmanlike manner.

Shortly thereafter, plaintiffs attempted to secure financial information regarding AED. They were, however, effectively blocked from doing so; Snavely sold AED's assets to DPI and then converted the purchase money to his own use. Subsequently, DPI wrote to various plaintiffs and demanded, upon the pain of stock forfeiture, that they pay the development costs which the corporation had incurred.

We accept as true the veracity of these factual allegations, *Walker Process Equipment Co. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981); *Bartholomew v. Fischl,* 534 F.Supp. 161, 164 (E.D.Pa.1981), and consider below the challenges to the RICO count and the propriety of venue in this district.

### RICO

Moving to dismiss, DPI argues that plaintiffs have failed to state a proper RICO claim against it. Plaintiffs, objecting generally to DPI's reliance upon cases which considered RICO *criminal* prosecutions, respond that they have, in fact, more than adequately alleged a *civil* RICO claim.

Plaintiffs' broad assertion that criminal cases which considered RICO prosecutions have little, if any, application to this civil case, is misplaced. True, the Government, in a criminal RICO prosecution, must prove each and every element of the charged offense beyond a reasonable doubt. *United States v. Kopituk,* 690 F.2d 1289, 1323 (11th Cir.1982). On the other hand, civil RICO plaintiffs need only prove

a violation by a preponderance of the evidence. *Parnes v. Heinold Commodities, Inc.,* 487 F.Supp. 645, 647 (N.D.Ill.1980). *Accord, Bennett v. Berg,* 685 F.2d 1053 (8th Cir.1982); *Engl v. Berg,* 511 F.Supp. 1146, 1154–56 (E.D.Pa.1981) (discussing civil RICO claim in the context of a Fed.R.Civ.P. 12(b)(1) and (6) motion). *See also, United States v. Cappetto,* 502 F.2d 1351, 1357 (7th Cir.1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). The variation in the *standard of proof* between the two types of RICO actions does not, however, alter the *essential elements* of the offense or the claim. The different standards of proof alter only the degree of certainty to which a jury must be convinced; they do not change the elements of the offense.

■ This conclusion finds support in a literal reading of the statute. *United States v. Turkette,* 452 U.S. 576, 593, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981) (noting that the "language of the [RICO] statute" is the "most reliable evidence of [Congressional] intent".) *Cf. Griffin v. Oceanic Contractors, Inc.,* —— U.S. ——, ——, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973, 980 (1982) (Courts must give effect to the will of Congress where "its will has been expressed in reasonably plain terms, th[e] statutory language must ordinarily be regarded as conclusive".) (quotation omitted). Permission to bring a civil action for a RICO violation, 18 U.S.C. § 1964(c), extends to those injured by a violation of the criminal RICO prohibitions, 18 U.S.C. § 1962. Had the Congress not intended civil RICO plaintiffs to prove the same *elements* which the Government must prove in a criminal case, it undoubtedly would not have defined a civil violation with specific reference to a criminal one. Therefore, in deciding whether plaintiffs have properly alleged a civil RICO claim, we may properly draw upon those criminal RICO cases which have described the essential elements of such a claim.

■ In order to state a RICO claim against any individual defendant, plaintiff must allege with regard to that defendant the:

(1) existence of an enterprise; (2) that the enterprise affected interstate commerce; (3) that the defendant was employed by or associated with the enterprise; (4) that he participated, either directly or indirectly, in the conduct of the affairs of the enterprise; *and* (5) that he participated through a pattern of racketeering activity, i.e., through the commission of at least two racketeering acts.

*United States v. Kopituk,* 690 F.2d at 1323 (emphasis added).

In the case at bar, defendant DPI argues that plaintiffs' complaint is fatally defective in that it fails to allege: the existence of an "enterprise", that DPI was "employed by" or "associated with" an "enterprise" and that DPI's hypothesized enterprise activities amount to "racketeering activity". Moreover, DPI urges that plaintiffs' complaint improperly alleges a RICO conspiracy. 18 U.S.C. § 1962(d).

Responding, plaintiffs argue that the "enterprise", which had different names at various times, consisted of a scheme to defraud them by the sale of unregistered securities without disclosure of highly relevant information. Specifically, the enterprise is identified by plaintiffs as bearing the name of each security or leasehold interest fraudulently sold by the defendants. Plaintiffs, still responding to the motion, asseverate that DPI "managed" the illegal "enterprise" after AED stepped aside and that DPI committed a sufficient number of mail-fraud acts to rise to the level of a "pattern of racketeering activity". 18 U.S.C. § 1961(1) and (5). *United States v. Sheeran,* 699 F.2d 112, 115 n. 6 (3d Cir.1983). Finally, plaintiffs urge that they have properly alleged a conspiracy. We now consider these issues.

■ Whether plaintiffs had alleged an "enterprise" turns upon whether the complaint discloses the existence of an "entity", a "group of persons associated together for a common purpose of engaging in a course of conduct"; *i.e.,* an "organization, formal or informal, [which] ... function[s] as a continuing unit". *United States v. Turk-*

*ette,* 452 U.S. at 583, 101 S.Ct. at 2528; *United States v. Dickens,* 695 F.2d 765, 773 (3d Cir.1982). Enterprise allegations may assert "diversified activity" or a "myriopod criminal network, loosely connected but connected nonetheless". *United States v. Elliot,* 571 F.2d 880, 899 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). *Cf., United States v. Palermo,* 410 F.2d 468, 470 (7th Cir.1969) (a single conspiracy properly described as "one overall agreement to extort money ... in any way possible").

In the case at bar, a "fair reading" of the complaint, *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. 1278, 1282 (D.Del.1978), discloses that defendants were involved in the sale of a series of fractional leasehold interests. Mindful of the deference which we must accord plaintiffs' factual allegations, *Engl v. Berg,* 511 F.Supp. at 1155, and recognizing that the exact relationship between the parties is somewhat imprecisely alleged, the complaint nevertheless articulates sufficiently "connected" activity to rise to the level of a RICO "enterprise". *United States v. Elliot,* 571 F.2d at 899.

DPI fares better, however, with its second argument. In order to succeed on their RICO claim, plaintiffs must allege, but have not, that DPI participated in the enterprise's affairs through a pattern of racketeering activity. Specifically, plaintiffs fail to allege that DPI committed at least two predicate racketeering acts. *United States v. Kopituk,* 690 F.2d at 1323; *United States v. Peacock,* 654 F.2d 339, 348 (5th Cir.1981), *vacated in part on other grounds,* 686 F.2d 356 (5th Cir. Unit B 1982); *United States v. Martino,* 648 F.2d 367, 383 (5th Cir.1981), *vacated in part on other grounds,* 681 F.2d 952 (5th Cir.1982) (In order to sustain a substantive RICO claim, proof that each individual defendant committed at least two racketeering acts is necessary); 18 U.S.C. § 1965(d).

We now examine this deficiency with regard to DPI and other moving defendants.

█ The complaint fails to allege that defendant, DPI's conduct amounts to racketeering activity. Plaintiffs' meager factual allegations which relate to DPI's conduct are essentially contained in ¶¶ 37, 38, 39, 42, 44 and 45 of the complaint. Plaintiffs allege therein that defendant Snavely improperly entered into an agreement with DPI, that DPI overcharged defendant AED for well development work which was not performed in a workmanlike manner, that defendant Snavely improperly sold corporate assets to DPI, that AED's failure to expeditiously develop specified leases resulted in a forfeiture thereof to DPI and that DPI wrote to some plaintiffs demanding payments. These allegations simply complain that Snavely twice engaged in improper conduct, that DPI charged an excessive price for poor quality work, that DPI benefitted from AED's inaction and that DPI sought payment directly from plaintiffs. Most importantly, plaintiffs have not alleged that Snavely's misconduct is attributable to DPI or the product of any Snavely-DPI conspiracy. Neither have they alleged that the overcharges and poor workmanship were part of a scheme or plot to defraud, nor that AED's inaction which benefitted DPI, to the detriment of plaintiffs, was in any way part of an illicit agreement. Finally, the complaint does not purport to assert that DPI's demand letters to plaintiffs were part of any fraudulent scheme. Briefly spoken, the complaint is totally barren of any allegation which attacks DPI's motive or intent with respect to the described transactions. Although plaintiffs assert that defendant *Snavely* acted improperly when he dealt away AED corporate assets to DPI, there is no allegation that Snavely's misconduct should be imputed to DPI. Consequently, plaintiffs have failed to allege in the above described portion of the complaint any facts which would indicate that DPI engaged in "racketeering activity". 18 U.S.C. § 1961(1).

The complaint is similarly defective as to defendants Dawson and Nau. The primary factual allegations lodged against them are contained, respectively, in ¶¶ 13, 23, 30, 35 and 40 and 20, 23 and 30 of the complaint. As to Dawson, plaintiffs have alleged: that he was an original incorporator of defend-

ant AED; that he wrote to co-owners of various leases and indicated that well production would soon begin; that he met with other directors of AED and agreed to pay compensation to corporate employees (now co-defendants); that he agreed to sell worthless equipment to AED for $4,000.00 and that he, along with other defendants, blocked plaintiffs' attempts to inspect the corporate record books.

The only hint of unlawful activity by Dawson is the alleged agreement to sell worthless equipment to AED. Even *assuming* that this rose to the level of a single predicate act of "racketeering activity", 18 U.S.C. § 1961, suit would nevertheless be barred because of the failure to articulate conduct which may properly be considered a "*pattern* of racketeering activity." 18 U.S.C. § 1961(5) (emphasis added).

This same pleading inadequacy seemingly warrants dismissal of the complaint as to defendant Nau. According to the complaint, Nau sent a letter to a plaintiff and misrepresented that a check was contained therein when, in fact, one was not. Additionally, plaintiffs complain that Nau wrote letters to various investors and advised them that specified leases were almost ready for production. Finally, Nau received compensation from her corporate employer, AED.

These allegations do not amount to "racketeering activity" and certainly do not admit to a "pattern" thereof. None of the allegations leveled at Nau assert that she wrongfully or fraudulently engaged in the complained of conduct. However, specific types of wrongful conduct are a *sine qua non* of a RICO claim. *See,* 18 U.S.C. § 1961.

Plaintiffs, recognizing and apparently conceding their pleading inadequacies as to defendants Dawson and Nau, urge that dismissal is nevertheless inappropriate because

the present case involves an invidious orchestrated effort on the part of several people to engage in a course of activity which was broader than that which is prohibited by the individual acts cited in 18 U.S.C. § 1961 which defines racketeering activity.

*Brief Of Plaintiffs In Opposition To Defendants Nau and Dawson's Motion To Dismiss,* (Document 55) at 9.

 In order to sustain a RICO claim, plaintiffs must allege and be prepared to prove a pattern of "racketeering activity" which is defined by specific reference to the statute. Any conclusion that a RICO claim can be stated by reference to non-statutorily defined "racketeering activity" could, possibly, present insurmountable constitutional problems. *See, United States v. Swiderski,* 593 F.2d 1246, 1249 (D.C.Cir.), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2055, 60 L.Ed.2d 662 (1979) (Turning aside a constitutional attack on RICO because of the manner in which the statute specifically and unambiguously defines a "pattern of racketeering activity".) Accordingly, plaintiffs' attempt to state a RICO claim against defendants Nau and Dawson based upon undefined "wrongful" conduct "broader than that which is prohibited" and which is not specifically listed as a RICO predicate offense, fails to state a claim.

 In fact, the only indication that either defendants DPI, Dawson or Nau have committed two predicate RICO acts is contained in ¶ 79 of the complaint. It haphazardly asserts that all the defendants defrauded plaintiffs through the sale of securities "by using the United States mails" in violation of the mail fraud statute. 18 U.S.C. § 1341.

This bare allegation is insufficient, against the backdrop of equally inadequate factual allegations, to state a RICO claim. Fed.R.Civ.P. 9(b) requires that allegations of fraud be stated with "particularity". This rule applies to allegations of mail fraud as predicate RICO civil offenses and generally requires assertions of "time, place and contents of false representations . . . [and] the identity of the person making the misrepresentation and what was obtained or given up thereby". *Bennett v. Berg,* 685 F.2d at 1062. *See also, Segal v. Gordon,* 467 F.2d 602, 606–09 (2nd Cir.1972).

Apparently attempting to allege a conspiracy within the meaning of 18 U.S.C. § 1962(d), ¶ 79 of the complaint asserts that defendants' purported mail fraud activities were "in concert or in combination" with the other defendants. This conclusory allegation of conspiracy, like the above described fraud charge, is inadequate to invoke our jurisdiction. In order to properly allege a conspiracy, plaintiffs must assert that each defendant so charged has

> by his words or actions ... objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through *the commission of two or more predicate crimes.*

*United States v. Boffa,* 688 F.2d 919, 937 (3d Cir.1982), quoting *United States v. Elliot,* 571 F.2d at 903; (emphasis in original); *United States v. Swiderski,* 593 F.2d at 1249.

In the case at bar, plaintiffs have failed to allege that DPI, Dawson or Nau's activities "in concert or in combination" with other defendants is evidenced by any "objective manifest[ation]". *See, United States v. Martino,* 648 F.2d at 383. Moreover, bare allegations of "conspiracy", like "fraud", are insufficient to properly invoke our civil jurisdiction under RICO. In fact, when alleging a civil RICO conspiracy to defraud,

> it is necessary to plead fraudulent conspiracy with enough specificity to inform multiple defendants of the facts forming the basis of the conspiracy charge. Such allegations must delineate among the defendants as to their participation or responsibilities in making the statements which are the subject of the suit. Conspiracies described in sweeping or general terms cannot serve as the basis for a cause of action, and may be dismissed.

*Van Schaick v. Church of Scientology of California, Inc.,* 535 F.Supp. 1125, 1141 (D.Mass.1982). (Citations and quotations omitted). *See also, Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir.1982) (pleading conspiracy requires factual allegations); *Mauriber v. Shearson/American Express,*

*Inc.,* 546 F.Supp. 391, 397 (S.D.N.Y.1982); *Eisman v. Pan American World Airlines,* 336 F.Supp. 543, 553 (E.D.Pa.1971). *Accord, Vuksta v. Bethlehem Steel Corp.,* 540 F.Supp. 1276, 1981, n. 15 (E.D.Pa.1982), *aff'd,* 703 F.2d 553 (3d Cir. February 25, 1983).

Plaintiffs urge, however, that the draconian result of dismissal should not obtain because any inability to plead "fraud" and "conspiracy" with the requisite specificity is grounded in defendants' success in hiding the truth. In other words, plaintiffs argue that they cannot plead with specificity because the facts underlying their claim are particularly within the defendants' knowledge. *See e.g., Denny v. Carey,* 72 F.R.D. 574, 578 (E.D.Pa.1976). Moreover, plaintiffs represent that if granted an opportunity to take discovery, they will file an amended complaint and cure any pleading defect which revolves around their failure to plead with specificity. *See,* Fed.R.Civ.P. 15(a).

Because Fed.R.Civ.P. 9(b) "must be harmonized" with Fed.R.Civ.P. 8; *Credit & Finance Corp., Ltd. v. Warner & Swasey Co.,* 638 F.2d 563, 566 (2nd Cir.1981), *Beascoechea v. Sverdrup & Parcel and Associates, Inc.,* 486 F.Supp. 169, 174 (E.D.Pa. 1980), we conclude that it would be error *at this stage* to grant the motions to dismiss for failure to plead with sufficient particularity. This conclusion finds support in the liberal federal policy which favors allowance of amendments, *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971); *Roesberg v. Johns-Manville,* 89 F.R.D. 63 (E.D.Pa.1981), and fosters the disposition of cases on the merits. *United States v. Hougham,* 364 U.S. 310, 317, 81 S.Ct. 13, 18, 5 L.Ed.2d 8 (1960), quoting, *Conley v. Gibson,* 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).

We will accordingly deny the motions to dismiss for failure to properly allege a RICO claim without prejudice to their renewal after plaintiffs have had the opportunity to take discovery for sixty days and to

file an amended complaint shortly thereafter.[1]

■ Plaintiffs fare better, however with their allegations of misconduct by the Richmond defendants. John and June Richmond are charged with using the mails to sell fractional shares in two specified leases while failing to disclose temporal and depth limitations placed upon development rights. Moreover, these two defendants purportedly made material misrepresentations regarding recoverable reserves which the wells could yield. *See,* Complaint ¶¶ 9, 10 and 11. These allegations disclose multiple uses of the mail to defraud plaintiffs, properly allege concerted or conspiratorial activity and state a RICO claim. *See,* Complaint ¶¶ 24, 25, 27, 34 (alleging specific misconduct by John Richmond.) Accordingly, we conclude that plaintiffs have stated a RICO claim against the Richmonds.

One more argument regarding the RICO claim merits attention. DPI urges that plaintiffs' complaint is defective because it lacks an allegation that DPI's purported association with the enterprise is distinct from DPI's alleged participation in the conduct of the enterprise through a pattern of racketeering activities. In other words, DPI urges a statutory construction based upon *United States v. Bledsoe,* 674 F.2d 647, 663 (8th Cir.1982), which requires both association with an enterprise and, as a separate element, participation in the enterprise's racketeering activities. Conversely, allegations that DPI engaged in the enterprise's predicate racketeering activity but had no separate, independent association with the enterprise, is insufficient to state a RICO claim, according to DPI. Support for this theory is provided by those courts which have delineated RICO's elements as requiring proof of participation in the "conduct of the affairs of the enterprise" *and* "participation through a pattern of racketeering activity". *See e.g., United States v. Kopituk,* 690 F.2d at 1323; *United States v. Martino,* 648 F.2d at 394. Indeed, we have

already quoted this same language in broadly introducing the elements of a RICO claim, *supra,* at 134.

We think, however, that this argument reads too much into the RICO statute, ignores Third Circuit authority and runs *counter to the elemental teaching of Turkette.*

■ The requirement that RICO defendants participate in the affairs of an enterprise *and* that they participate through a pattern of racketeering activity, simply guards against the possibility of convicting enterprise participants who fail to commit racketeering acts. It does not permit RICO defendants to avoid the statute's proscription by limiting their multiple enterprise activities solely to racketeering conduct. Any other conclusion would permit broad circumvention of RICO notwithstanding the fact that its provisions should be "liberally construed to effectuate its remedial purposes". *United States v. Turkette,* 452 U.S. at 587, 101 S.Ct. at 2531.

■ Moreover, the notion that RICO requires distinct enterprise associational and enterprise racketeering activities was implicitly rejected in *United States v. Provenzano,* 688 F.2d 194 (3d Cir.1982). There, the court adopted the Second Circuit's formulation of the RICO statute that a violation is made out where a defendant

is enabled to commit the predicate offenses *solely by* virtue of his position in the enterprise or involvement in or *control of the affairs of the enterprise.*

*Id.* at 200, quoting, *United States v. Scotto,* 641 F.2d 47, 54 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). (emphasis added). The emphasized language from *Provenzano* demonstrates that RICO defendants need not have distinct enterprise associational and enterprise racketeering activities. So long as a defendant "control[s] the affairs of an enterprise" through a pattern of racketeering activity, a violation is made out.

---

1. In light of our disposition, we will likewise deny without prejudice the motions to dismiss the pendent claims.

A contrary conclusion would immunize defendants whose association with enterprises was wholly illegitimate and consisted of nothing more than illegal, racketeering conduct.

The Supreme Court considered a similar argument in *Turkette.* There, defendants argued that RICO was not intended to reach "enterprises" which were "exclusively criminal", 452 U.S. at 578, 101 S.Ct. at 2526. The Supreme Court deemed this contention "unacceptable" since "[w]hole areas of [prohibited] activity would be placed beyond the substantive reach of the enactment". *United States v. Turkette,* 452 U.S. at 589, 101 S.Ct. at 2532. Most relevantly, the court pointed out that the proffered interpretation would immunize RICO defendants "so long as the association did not deviate from the criminal path". *United States v. Turkette,* 452 U.S. at 590, 101 S.Ct. at 2532. Likewise, DPI's construction which requires enterprise associational activities that are independent from enterprise racketeering activities would place defendants beyond the scope of the Act so long as they do not "deviate from the criminal path". *Id.* By limiting associational activities solely to racketeering acts, no prosecution or suit could lie. This construction, paralleling the hypothesized *Turkette* construction, is equally "unacceptable". *United States v. Turkette,* 452 U.S. at 589, 101 S.Ct. at 2532.

## VENUE

We now consider whether venue is properly laid within this district. The venue provision for private RICO cases provides that suit

> may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

18 U.S.C. § 1965(a). This language is precatory; it describes districts in which suit "may", rather than "must" be brought. Because of this phenomenon, the general venue provisions of 28 U.S.C. § 1391(b) are "supplemental" to RICO's more specific venue provision. *Farmers Bank v. Bell Mortgage Corp.,* 452 F.Supp. at 1280. *See*

*also, Superior Oil Co. v. Andrus,* 656 F.2d 33, 36 n. 3 (3d Cir.1981) (dictum).

28 U.S.C. § 1391(b), which protects a *defendant* against the possibility that plaintiff may select an unfair or inconvenient forum, *Leroy v. Great Western United Corp.,* 443 U.S. 173, 183–84, 99 S.Ct. 2710, 2716–17, 61 L.Ed.2d 464 (1979), provides in relevant part that suit may be brought

> *only* in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

(emphasis added). In the case at bar, plaintiffs apparently concede that venue is not properly laid under RICO's venue provision, 18 U.S.C. § 1965(a). They argue, however, that venue is proper in this district because the "claim arose" here. 28 U.S.C. § 1391(b). Specifically, plaintiffs assert that under a "weight of the contracts" analysis, *Lieb v. American Pacific International, Inc.,* 489 F.Supp. 690, 696 (E.D.Pa.1980), the most significant contacts between defendants Capin and Barrett, on one hand, and plaintiffs on the other, occurred in this district. Hence, they assert that their claim against these defendants "arose" in this judicial district and that venue is proper.

We disagree with plaintiffs' analysis of the venue issue and grant Capin and Barrett's motion to dismiss.

In asserting that the "claim arose" in this district, plaintiffs urge a misapplication of the "weight of the contacts" test. Specifically, *before* courts inquire into the qualitative and quantitative contacts which defendants have with the judicial district, they must review the complaint to determine whether

> plaintiff has alleged that each participant in the conspiracy [who challenges venue] has engaged in some significant or substantial act pursuant to the conspiracy in [the] district.

*Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. at 1281.

Accordingly, resolution of this issue requires initial reference to the complaint for a determination of whether it alleges that

defendants Capin and Barrett[2] engaged in some "significant or substantial" conduct within *this* district. Only if our inquiry yields an affirmative answer, should we analyze the "significance" and "weight" of the alleged contacts.

According to the complaint, defendants Barrett and Capin, an engineer and petroleum geologist, respectively, each generated "misleading reports" which served as a predicate for specified "material misrepresentations" made in connection with the sale of well reserves. Complaint ¶ 11. The reports contained descriptions of properties outside of this judicial district. Plaintiff does not allege that the purportedly misleading reports were written in, or sent to, this district by either of defendants Capin or Barrett.

The fact that Capin and Barrett purportedly wrote misleading reports in another district and that a co-defendant premised his own intra-district misrepresentations on these reports, fails to satisfy the venue requirement that defendant engage in some "significant act ... pursuant to the conspiracy in *that* [challenged] district". *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. at 1281 (emphasis added). In a word, defendants Capin and Barrett's contact with this district is far too attenuated to establish venue. Accordingly, their motion to dismiss will be granted.

Defendants McCarrihan and Smith also move to dismiss and argue that the complaint fails to allege any facts sufficient to conclude that venue in this district is proper as to them. Plaintiffs, responding, argue that although these defendants have no personal contact with the district, venue is nevertheless proper because Smith and McCarrihan knowingly permitted co-defendant conspirators to defraud plaintiffs within the district and that any other conclusion would inconvenience plaintiffs by

requiring "separate lawsuits in several districts". In so urging, plaintiffs overlook not only the clear rejection of the "conspiratorial theory of venue", n. 2, *supra,* but also the fact that the venue statute does not authorize a forum based upon plaintiff's convenience. *Leroy v. Great Western United Corp.,* 443 U.S. at 183, 99 S.Ct. at 2716. Accordingly, we conclude that the lack of intradistrict activity by defendants Smith and McCarrihan warrants dismissal of the complaint as to them.

We reject, however, the attack on venue mounted by defendants John and June Richmond. In contrast to the "co-conspiratorial theory of venue" alleged by plaintiffs as to defendants Capin, Barrett, McCarrihan and Smith, the complaint asserts that the Richmonds, acting through their *agent,* Snavely, fraudulently sold and offered to sell fractional leasehold interests within this district. *See,* Complaint ¶¶ 9, 10, 11, 20, 23, 24 and 25. Given the fact that this conduct by the Richmonds is a "sufficiently material" aspect of the fraudulent scheme, and that they conducted intra-district activity through an agent, we conclude that venue is properly laid in the Eastern District of Pennsylvania. *Commodity Futures Trading Commission v. Savage,* 611 F.2d 270, 278 (9th Cir.1979). Moreover, specified intra-district telephonic representations made directly by John Richmond to plaintiff Eaby provides additional support for this conclusion. *Id. See,* Complaint ¶ 27.

This same result obtains as to defendants Nau and Dawson who also complain that venue is improperly laid as to them. Specifically, these defendants wrote to plaintiffs a number of times regarding well development and production. *See,* Complaint ¶¶ 20 and 23. Such intradistrict conduct satisfies the venue statute. *Cf. Kogok v.*

---

**2.** Clearly, venue must be properly laid as to *each* defendant. The mere fact that some alleged co-conspirators may have engaged in conduct in furtherance of the conspiracy within this district, does not properly establish venue as to all other co-conspirators. Indeed, this so-called "conspiratorial theory" of venue has

been firmly rejected. *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. at 1281, n. 5. *See also, Anrig v. Ringsby United,* 603 F.2d 1319, 1326 (9th Cir.1978); *Piedmont Label Co. v. Sun Garden Packing Co.,* 598 F.2d 491, 493 (9th Cir.1979).

*Fields,* 448 F.Supp. 197, 198–99 (E.D.Pa. 1978) (Venue properly laid under 15 U.S.C. 78aa's standard where defendants mailed proxy statements to plaintiffs).

We, therefore, conclude that the intra-district activity of the Richmonds, conducted through their agent Snavely and the authorship of and mailing letters to this district by defendants Nau and Dawson, amounts to sufficient activity within the district to support venue. 28 U.S.C. § 1391(b); *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. at 1281.

Unlike the failure to plead fraud or conspiracy with particularity, plaintiffs' failure to properly allege venue as to defendants Capin, Barrett, Smith and McCarrihan warrants dismissal, with prejudice, of the complaint as to them. Our declination to treat plaintiffs' pleading inadequacies on the substantive RICO count in a similar manner is grounded in our hesitation to hold plaintiffs to a standard of factual pleading when defendants have purportedly concealed the very facts which must be alleged. Moreover, plaintiffs have specifically represented that upon taking additional discovery they will be able to file an appropriate amended complaint and properly state the "fraud" or "conspiracy" elements of a RICO claim. No such representation has been made with respect to the venue challenges. For these reasons, we conclude that dismissal with prejudice is appropriate as to defendants Capin, Barrett, McCarrihan and Smith.[3]

An appropriate order shall issue.

### ORDER

AND NOW, this 11th day of March, 1983, IT IS ORDERED that the motions of defendants Capin, Barrett, McCarrihan and Smith to dismiss are GRANTED and that the motions of defendants D'Appolonia Petroleum, Inc., Dawson, Nau, John Richmond and June Richmond are DENIED without prejudice to the renewal thereof after plaintiffs file an amended complaint.

IT IS FURTHER ORDERED that plaintiffs' motion to compel production of documents (Document 43) is GRANTED and that the motions of defendants American Energy Developers, Inc., Nau, Dawson, D'Appolonia Petroleum, Inc., John Richmond and June Richmond for protective orders are DENIED for a sixty (60) day period.[1]

---

3. In light of this conclusion we need not address the issues which these defendants raise with respect to the RICO claim.

1. Some defendants have represented that the progress of discovery may be impeded by both the dormancy of defendant American Energy Developers, Inc. and the illnesses of defendants Dawson and June Richmond, coupled with the fact that various governmental investigatory bodies may currently have possession of some documents which are sought by plaintiffs. Accordingly, if discovery does not progress apace, plaintiffs may make application to the Court to extend the time within which to file an amended complaint. We have every confidence, however, that counsel will fully cooperate in promptly responding to discovery requests and that this matter will proceed in a timely fashion.